William Edward Booher, Appellant, v. Floyd Williams and Ava E. Williams, Appellees.

Term No. 50M4.

Heard in this court at the May term, 1950. Opinion filed September 20, 1950. Rehearing denied October 24, 1950. Released for publication October 26, 1950.

Dowell & Dowell, George W. Dowell, and N. Y. Dowell, all of Salem, for appellant.

Raemer & Horn, of Salem, for appellees.

Mr. Presiding Justice Scheineman delivered the opinion of the court.

The plaintiff appellant, William Edward Booher, hereafter referred to as contractor, filed a suit to foreclose a mechanic's lien upon the property of the de-

fendants, Floyd Williams and Ava E. Williams, hereafter referred to as owner.

The complaint alleged a contract between the contractor and owner, a copy of which was attached to the complaint and which provided for the construction of a house according to drawings and specifications and general conditions of the contract attached and which contained the following provisions regarding price:

"Article III. The owner agrees to pay the contractor in current funds for the performance of the contract $12,462.40 subject to any additions or deductions to the general conditions of the contract agreed upon in writing, and to make payments on account hereof upon presentation of proper lien waivers, as the work progresses and as follows: less difference between oil unit and stoker unit which will be refunded to owner. Four payments on labor and material plus down payment on material."

The complaint further charged that this contract pertained to the construction of a building on the premises described; that there had been extra material and work ordered and agreed to be paid for; that the contractor had performed the work and furnished the materials as required by the said plans and specifications until the completion on November 10, 1948; that the owner had paid the contractor $6,000 on account and $3,950.09 to Ryan Lumber Company; that the actual value of work and labor performed under the original and supplemental contracts was $16,131.78; that there was a balance due the contractor of $3,603.41 and a balance due Ryan Lumber Company of $2,578.28. The complaint further prayed for a lien for the balance due the contractor and for appropriate relief therewith.

The owner answered and filed counterclaim, of which the essential averments may be summarized as follows: The original contract is admitted; the order-

ing of extra work for which extra payment was to be made is also admitted. It is further claimed that a supplemental agreement was made covering changes from the original contract in certain specific respects which are enumerated, including the provision for a basement not contemplated in the original contract at an extra charge of $1,000 and claiming credits for the substitution of a coal stoker for an oil burner, and for a change in the partition in the front room effecting a saving of $200; further alleging an increased cost in the substitution of windows in the amount of $211.44; further setting forth certain minor items advanced by the owner in addition to the credits mentioned in the complaint, and setting up that, with the adjustments for alterations and extras, the total contract price came to $13,300.84 and that there remained a balance due the contractor in the sum of $3,269.94, which amount was tendered and paid into court.

It was further alleged that the contractor had failed to pay the various materialmen and subcontractors who were threatening to file liens against the owner; that the aggregate of the threatened liens exceeded the balance due to the contractor; the various claimants were named as additional defendants and were summoned in the suit; with appropriate prayers for relief.

Upon a hearing before the chancellor, evidence was taken and at the conclusion thereof a decree was entered finding the equities with the counter-plaintiffs, fixing the amounts due the various subcontractors and materialmen, finding that the amount tendered was the amount due on contract, but ordering the owner to pay $1,452.44 in addition to the amount of the tender to provide a sufficient amount to satisfy all lien claims; directing the clerk to satisfy all the liens therefrom, finding that the total thus paid by the owner exceeded the amount due the contractor by the sum of $1,451.63, for which latter sum judgment was en-

tered in favor of the owner against the contractor, together with costs of suit.

The contractor has appealed to this court and contends here that the findings of the court below are contrary to the manifest weight of the evidence; further contending that the contractor is entitled to the amount he claimed in his complaint, with interest, and asserting errors in procedure.

The statement of facts and the argument of the appellant repeatedly assert that the findings of the court are against the manifest weight of the evidence, but without any reference to any portion of the abstract or any statement of evidence supporting the claims of plaintiff.

From our own examination of the testimony, we are unable to find any evidence which can be regarded as a legal basis for plaintiff's claims. He stated that the total cost exceeded the contract price by $3,668.12, but he does not attempt to itemize the costs, nor does he assert that the owner agreed to pay any such additional amount, either expressly or by implication. On the contrary, it is plain from the contractor's testimony, that he has wholly disregarded his contract in making his computation.

Although the complaint purports to be a suit upon a written contract, with a specified price, the contractor testified, in substance, that he had decided to sue for cost plus 10 per cent. He admits that his figures were made up on this basis. He makes no claim that the contract was abandoned by agreement. His reasons seem to be in part, that there were alterations in the plans, and that the specified prices were too low to yield himself a profit. The only definite figure on an extra in his testimony, is to the effect that a change in the type of windows added $619.36 to the cost. His own witness, the manager of the lumber yard, testified the difference in cost of the two types of windows was

$211.44, which is exactly the figure set forth in the counterclaim.

The owner testified that during the progress of the work he found that, notwithstanding substantial payments made by him to the contractor, various subcontractors and materialmen, especially the lumber company, were not being paid, and he accordingly stopped payment on one of his checks; that thereupon the contractor abandoned the job and left it idle for several days; that thereupon he caused his attorney to notify the contractor of his defaults, and the contractor admits receiving such notice, which enumerated the defaults by the contractor and included the following statement in behalf of the owner: ''Unless you enter into a new agreement with him within 10 days from this date, he will obtain a contract from some reputable contractor to finish your job and hereby demand of you any damage which he may be required to pay over and above your contract obligation. And hereby further notify you that he will institute legal proceedings, if necessary, to collect any damage sustained by him,'' etc.

The owner further testified that after the contractor received this notice he met with the owner, and they agreed upon the amounts to be added and deducted by reason of alterations and extras, and the amounts thereof were indorsed by the contractor, in his own handwriting, upon the copy of the contract retained by the owner. That the owner, pursuant to agreement with the contractor, then paid $2,950.09 to the Ryan Lumber Company, and that the contractor thereupon gave the owner a receipt (presented in evidence) acknowledging said payment as credited on the contract. Thereafter the work proceeded to completion.

Most of the facts stated by the owner are admitted by the contractor, including the written indorsements by him on the contract. But he still declared this

was not a contract, that he was not proceeding under the contract, and that he gave the receipt acknowledging payment of $2,950.09 on the original contract "under threat," which appears to refer to the notice threatening suit.

We have examined the evidence pertaining to all of the items, including the smaller amounts not specifically mentioned in this opinion, and we arrive at the following conclusions:

■■ If it be the contention of appellant that the indorsement on the contract of fixed prices for alterations, was made under coercion or duress, we hold that the evidence fails to establish such a claim. "It is not coercion or duress for a person, who is making a claim against another who disputes it, to threaten to bring suit in a court of competent jurisdiction against that other and to use every effort to procure a judgment to the full extent of his claim." *Mills v. Cook County Forest Preserve Dist.*, 345 Ill. 503, 511.

■■ In our opinion, the weight of the evidence supports the finding of a contract for the construction of a dwelling at an agreed price with certain extras and alterations also on an agreed basis. Under such circumstances the contractor is only entitled to the contract price, plus the amounts agreed upon for alterations and extras and less the credits agreed upon in connection with these alterations, and the contractor has no right to assert an additional commission for his services over and above the agreed price even though as a matter of fact his undertaking was at too low a price so that he lost money upon the project.

■ It is claimed that the building as constructed is fully worth $16,000, and it is unfair for the owner to insist upon paying less. In our opinion, where there is a specific contract with agreed prices, the con-

tractor can collect that amount only, and evidence of the value of the completed structure is irrelevant.

The fact that deviations from the original plans and specifications were agreed upon by owner and contractor, does not give the contractor any right to declare the contract cancelled, without the consent of the owner.

Evidence of a usage or custom of contractors to charge 10 per cent for their own services, is inadmissible to alter the terms of a written contract containing a definite price; and it cannot be used in computing the extras, when these are also agreed upon at fixed prices.

The contract provided for payment by the owner "upon presentation of proper lien waivers." These were not provided. In fact, the lumber company had filed suit to foreclose its lien, and other subcontractors were admittedly unpaid. Therefore, payments on the contract were not due by its terms, and the plaintiff's claim for interest was properly disallowed.

Appellant's objection to the use of a counterclaim is without merit. The Lien Law specifically provides that the owner may file a counterclaim to recover the excess of his claim over that due the contractor. Ill. Rev. Stat. ch. 82, par. 13 [Jones Ill. Stats. Ann. 74.13]. It was proper to make all possible lien claimants parties defendant, so that the owner's total liability on his property might be effectively adjudicated.

The findings of the chancellor were in accordance with the law and the evidence, there was no error in the procedure, and the decree of the circuit court is affirmed.

*Decree affirmed.*

CULBERTSON and BARDENS, JJ., concur.