Watson Lumber Company, a Corporation, Plaintiff-Appellee, v. William F. Guennewig and Mary E. Guennewig, Defendants-Appellants.

Gen. No. 66–8.

Fifth District.

February 13, 1967.

Rehearing denied March 31, 1967.

Morris B. Chapman and Roy W. Strawn, of Granite City, for appellants.

Gordon Burroughs of Burroughs, Simpson and Burroughs, of Edwardsville, and Emerson Baetz, of Alton, for appellee.

EBERSPACHER, J.

The corporate plaintiff, Watson Lumber Company, the building contractor, obtained a judgment for $22,500 in a

suit to recover the unpaid balance due under the terms of a written building contract, and additional compensation for extras, against the defendants William and Mary Guennewig. Plaintiff is engaged in the retail lumber business, and is managed by its president and principal stockholder, Leeds Watson. It had been building several houses each year in the course of its lumber business.

The contract language and specifications which were prepared by plaintiff and signed in its office on December 3, 1962, contemplated the construction of a 4-bedroom, 2-bath, air-conditioned home on the defendant's lot at a contract price of $28,206. The plans from which Watson prepared the plaintiff's bid and specifications were put in his hands by the defendants, and became part of the contract along with the specifications. The construction was apparently commenced in December 1962, and by August 1963, the contractor was claiming the house was complete, and requesting payment of the contract balance; it had been doing so for about 30 days. The defendants had withheld payment contending dissatisfaction with the performance and failure to complete in accordance with the terms of the contract.

The parties agreed that the defendants have paid the sum of $11,407.20 on the contract price, thus leaving a balance of $16,798.89. The trial judge who heard the case, without a jury, stated that his award included the balance of the "agreed basic price" together with interest for two years from the date of the defendants' last payment, being July 1963, at the statutory rate of 5%. He also obviously included an amount for "extras," and states that from the amount of the award "the allowance for defective items" have been deducted in response to defendants' claim for setoff.

The contractor claimed a right to extra compensation with respect to no less than 48 different and varied items of labor and/or materials. These items range all the way from $1.06 for extra plumbing pieces to $429

384

for an air-conditioner larger than plaintiff's evidence showed to be necessary, and $630 for extra brick work. The evidence, in support of each of these items and circumstances surrounding each being added, is pertinent to the items individually, and the evidence supporting recovery for one, does not necessarily support recovery for another.

When we total the elements that the trial judge set out in the judgment order, and which plaintiff contends are included, we do not reach the total of $22,500, for which judgment was given to the plaintiff. Thus the whole appears here to be greater than the sum of all its parts, even before any of the parts are subjected to examination. The plaintiff, in his explanation of the judgment contained in his brief, tells us that the "extras" charged and apparently awarded in his recovery, total $3,840.09. While it was disputed whether or not the contract balance was due, it was not disputed that the amount of the balance was $16,798.89. Interest as described by the judge, was 5% per year for two years on this balance, thus making the maximum interest, apparently included, $1,679.88. The total of these three; the contract balance, the interest and the extras charged amount to $22,318.77. This appears to us to be the total of every part which the plaintiff claims is included in the judgment under his own view of the matter; yet this leaves us still $181.23 short of reaching the amount of the judgment entered. This leaves us completely at a loss to find any deductions or setoffs of any kind allowed to the defendants for "omissions or defects." While the order recites "that claims for omission or defects" were considered, it also recites "but allowed nothing for claims for defects which appeared to have been brought on by the defendants or which are trivial," but it also recites that there has been an allowance made for defective items ("less the allowance for defective items"). The plaintiff's brief says that the trial judge reduced the claim "by an undisclosed

385

sum" as "allowances for defects and omissions in the work." We find the sum not merely undisclosed, we find it undiscoverable.

The defendants contend that the plaintiff failed to complete performance under the contract, and that the work was faulty in several respects. The evidence clearly shows this to be the case. It warrants giving defendants the benefit of a setoff substantial enough to be found without the aid of searching calculations. Principal claims of error in the trial court are: (A) That the plaintiff was not held to the burden of proof which the law assigns to one making a claim for extras under these circumstances; that the evidence is not adequate to support the award for extras which the judgment of the court below contains, and, (B), That the written contract provided that changes and additions in work or material were to be agreed to in writing; that this requirement was not complied with by the plaintiff nor was it waived by the defendants and that the evidence in the record fails to establish either compliance or waiver. The case thus involves reference to the written agreement which contained the following:

> "Drawings and specifications are intended to co-operate. Anything shown on the drawings but not mentioned in the specifications or vice versa or anything not expressly set forth in either but which is reasonably implied shall be furnished as though specifically shown and mentioned in both without extra charge. Changes in work or material from that specified shall be stipulated in writing and attached to and made a part of the contract."

 Contract language is to be given its clear meaning if clarity is present, but ambiguities or uncertainties are to be resolved against the party creating them. Spitz v. Brickhouse, 3 Ill App2d 536, 123 NE2d 117. Here, the contractor is the author of the language.

 The trial judge states in the order that there are ambiguities present in the contract, but the record indicates no resolving of any of the ambiguities in favor of the defendants as the law requires. Indeed, it does not show that the contract language was given any effect or operation in the trial. It cannot be ignored for that would, in effect, be writing a new agreement different than the one the parties made. There is no basis for ignoring their agreement. Deviations by the parties from contract terms do not produce a legal cancellation. Booher v. Williams, supra.

 Watson, over objection, was allowed to testify that the finished house was what the defendants wanted, although not what the plans and specifications called for. Preliminary negotiations of the parties leading up to a written contract are mentioned in the written agreement and the oral negotiations may not be shown for the purpose of contradicting the written agreement when it is acknowledged as it was here, that this written contract, which included the plans and specifications, constituted the full agreement between the parties, and at the outset was accepted by both as such. The parol evidence rule in essence, is a rule of contract law rather than a rule of evidence. It requires that the terms of the written contract will not be altered by oral testimony; and evidence cannot be permitted, that the parties did not in fact agree to what was written or agreed to something else. Corbin on Contracts, § 573; Anson on Contracts, Patterson Edition, § 366. Parol evidence cannot be used to vary or contradict the plain unambiguous terms of a building contract. 13 Am Jur2d 114, "Building & Construction Contracts," § 124.

Neither does the record contain any evidence to support or warrant the finding of the trial judge expressed in his order:

"The house was built under mail order plans not meant for the location in question. . . ."

■ There is no evidence in the record that the plans weren't suited to the lot. There is evidence that plaintiff had a complete knowledge of them; that its specifications and contract price were prepared with reference to them, and that they were made a part of the contract. Their origin is irrelevant; their quality or the degree of skill they may reflect does not legally handicap either party. The plaintiff found them usable throughout. There is no evidence that the defendants warranted the plans or represented them to be anything that they were not. They did not enlarge the contractor's burdens or risks. Indeed, he made them a part of his promise. When they became part of the contract they represented what was agreed to.

If there was any lack of foresight reflected in the contractor's bid and contract price, it did not result in extra cost to the owner. This had been agreed on by the parties in the following language in the specifications, which became a part of their written contract:

> "Before submitting his bid, contractor shall examine the building site. No allowance will be made for lack of full knowledge of all conditions except such underground conditions as are indeterminable before the beginning of the work."

This language, like the other quoted terms of the contract, was the plaintiff's own, and should therefore be taken most strongly against it. Dailey v. Meredith, 56 Ill App2d 230, 205 NE2d 640; Spitz v. Brickhouse, 3 Ill App2d 536, 123 NE2d 117. Any ambiguity should be resolved against the party who chose the words. In this case, we cannot find that the language was given any effect, or in any way applied to the case.

■ Most of the extras claimed by the contractor were not stipulated in writing as required by the contract. The contractor claims that the requirement was waived. Prior to considering whether the parties, by agreement or

conduct dispensed with the requirement that extras must be agreed to in writing, it should first be determined whether the extras claimed are genuine "extras." We believe this is an important area of dispute between these parties. Once it is determined that the work is an "extra" and its performance is justified, the cases frequently state that a presumption arises that it is to be paid for. Adams v. Tri-City Amusement Co., 124 Va 473, 98 SE 647. No such presumption arises, however, where the contractor proceeds voluntarily; nor does such a presumption arise in cases like this one, where the contract makes requirements which any claim for extras must meet. Buckingham Routh Co. v. Wuesterfeld Co., 114 Conn 720, 157 A 414. In 17A CJS, § 371(4), Contracts, it is stated:

> "Where the contract provides that there shall be no charge for extra work unless a written agreement is made therefor, the builder cannot recover compensation as for extra work on account of alterations made at the oral request or consent of the owner but for which no agreement to pay additional compensation is made."

and,

> "Where at the request of the owner, the builder makes alterations from the original contract which are such that the owner is justified in thinking that there will be no extra cost, therefore, he should notify the owner that there will be extra cost if such is the case, otherwise, he will be precluded from claiming extra compensation."

██ The law assigns to the contractor, seeking to recover for "extras," the burden of proving the essential elements. Leafgreen v. Yablonsky, 178 Ill App 19. That is, he must establish by the evidence that (a) the work was outside the scope of his contract promises; (b) the

extra items were ordered by the owner, Cerny-Pickas & Co. v. Dallach, 249 Ill App 424. Dickinson v. Prince, 61 Ill App 335, Edward Edinger Co. v. Willis, 260 Ill App 106; (c) the owner agreed to pay extra, either by his words or conduct, Snead & Co. Iron Works v. Merchants Loan & Trust Co., 225 Ill 442, 80 NE 237; (d) the extras were not furnished by the contractor as his voluntary act, and (e) the extra items were not rendered necessary by any fault of the contractor. McKay Engineering & Construction Co. v. Chicago Sanitary Dist., 348 Ill App 89, 108 NE2d 39; Salomon-Waterton Co. v. Union Asbestos & Rubber Co., 263 Ill App 583.

■ The proof that the items are extra, that the defendant ordered it as such, agreed to pay for it, and waived the necessity of a written stipulation, must be by clear and convincing evidence. The burden of establishing these matters is properly the plaintiff's. Evidence of general discussion cannot be said to supply all of these elements.

The evidence is clear that many of the items claimed as extras were not claimed as extras in advance of their being supplied. Indeed, there is little to refute the evidence that many of the extras were not the subject of any claim until after the contractor requested the balance of the contract price, and claimed the house was complete. This makes the evidence even less susceptible to the view that the owner knew ahead of time that he had ordered these as extra items and less likely that any general conversation resulted in the contractor rightly believing extras had been ordered.

■ In a building and construction situation, both the owner and the contractor have interests that must be kept in mind and protected. The contractor should not be required to furnish items that were clearly beyond and outside of what the parties originally agreed that he would furnish. The owner has a right to full and good faith performance of the contractor's promise, but has

no right to expand the nature and extent of the contractor's obligation. On the other hand, the owner has a right to know the nature and extent of his promise, and a right to know the extent of his liabilities before they are incurred. Thus, he has a right to be protected against the contractor voluntarily going ahead with extra work at his expense. He also has a right to control his own liabilities. Therefore, the law required his consent be evidenced before he can be charged for an extra. Booher v. Williams, 341 Ill App 504, 95 NE2d 518; and here the contract provided his consent be evidenced in writing.

 The amount of the judgment forces us to conclude that the plaintiff contractor was awarded most of the extra compensation he claims. We have examined the record concerning the evidence in support of each of these many items and are unable to find support for any "extras" approaching the $3,840.09 which plaintiff claims to have been awarded. In many instances the character of the item as an "extra" is assumed rather than established.[1] In order to recover for items as "extras," they must be shown to be items not required to be furnished under plaintiff's original promise as stated in the contract, including the items that the plans and specifications reasonably implied even though not mentioned. A promise to do or furnish that which the

---

[1] We cite as some examples: An extra charge was made for kitchen and bathroom ceilings, concerning which Watson testified that he was going to give these as gifts "if she had paid her bill." According to the testimony, the ceilings were lowered to cover the duct work. We consider it unlikely that the parties intended to build a house without duct work or with duct work exposed. Likewise an "extra" charge was made for grading, although the contract clearly specifies that grading is the contractor's duty. An "extra" charge is sought for enclosing the basement stairs, although the plans show the basement stairs enclosed. An extra charge is sought for painting, apparently on the basis that more coats than were provided in the contract were necessary.

promisor is already bound to do or furnish, is not consideration for even an implied promise to pay additional for such performance or the furnishing of materials. The character of the item is one of the basic circumstances under which the owner's conduct and the contractor's conduct must be judged in determining whether or not that conduct amounts to an order for the extra.

 The award obviously includes items which Watson plainly admits "there was no specific conversation." In other instances, the only evidence, to supply even by inference, the essential element that the item was furnished pursuant to the owner's request, and agreement to pay is Mr. Watson's statement that Mrs. Guennewig "wanted that." No specific conversation is testified to, or fixed in time or place. Thus it cannot be said from such testimony whether she expressed this desire before or after the particular item was furnished. If she said so afterward, the item wasn't furnished on her orders. Nor can such an expression of desire imply an agreement to pay extra. The fact that Mrs. Guennewig may have "wanted" an item and said so to the contractor falls far short of proving that the contractor has a right to extra compensation. See, 17A Corpus Juris Secundum, 401, § 371(1), where the rule is expressed thus:

". . . he (the owner) is not rendered libel [sic] by the mere fact that he has knowledge that the builder is doing extra work if he does not know that the builder expects additional pay. . . .

". . . as a general rule, a builder or contractor is not entitled to additional compensation for extra work or material voluntarily furnished by him without the owner's request, or knowledge that he expects to be paid for it."

Many items seem to be included as "extras" merely because plaintiff had not figured them in the original cost figures.

 It is clear that the contractor does not have the right to extra compensation for every deviation from the original specification on items that may cost more than originally estimated. The written contract fixes the scope of his undertaking. It fixed the price he is to be paid for carrying it out. The hazards of the undertaking are ordinarily his. McKay Engineering & Construction Co. v. Chicago Sanitary Dist., supra.

> "If the construction of an entire work is called for at a fixed compensation, the hazards of the undertaking are assumed by the builder, and he cannot recover for increased cost as extra work in discovering he has made a mistake on the estimate of the cost, or that the work is more difficult and expensive than he anticipated." 17A Corpus Juris Secundum, 413, "Contracts," § 371(6).

 Some so called "extras" were furnished, and thereafter the owner's agreement was sought.[2] Such an agreement has been held to be too late. Leafgreen v. Yablonsky, supra.

The judge, by his remarks at the time of awarding judgment, shows that the definition of extras applied in this case was, indeed, broad. He said,

> "substantial deviations from the drawings or specifications were made—some deviations in writing signed by the parties, some in writing delivered

---

[2] The drain tile around the foundation of the house, according to the evidence, was already in place when it was disclosed to the owner that it was more expensive material. It was only then that the contractor secured the owner's consent to pay for one-half the cost of the more expensive material.

but not signed, but nevertheless utilized and accepted, some delivered and not signed, utilized and not accepted, some made orally and accepted, some made orally but not accepted, and some in the trade practice accepted or not accepted."

While the court does not state that he grants recovery for all extras claimed, he does not tell us which ones were and were not allowed. The amount of the judgment requires us to assume that most were part of the recovery. It can be said with certainty that the extras allowed exceeded those for which there is evidence in the record to establish the requirements pointed out.

██ Mere acceptance of the work by the owner as referred to by the court does not create liability for an extra. Mueller v. Rosen, 179 Ill 130, 53 NE 625. In 13 Am Jur2d, 60, "Building & Const Cont," § 56, it is stated, that: "The position taken by most courts considering the question is that the mere occupancy and use do not constitute an acceptance of the work as complying with the contract or amount to a waiver of defects therein." Conversation and conduct showing agreement for extra work or acquiescence in its performance after it has been furnished will not create liability. Greenleaf v. Yablonsky, supra. More than mere acceptance is required even in cases where there is no doubt that the item is an "extra." Great Lakes Dredge & Dock Co. v. City of Chicago, 353 Ill 614, 188 NE 196.

██ The contractor must make his position clear at the time the owner has to decide whether or not he shall incur extra liability. Fairness requires that the owner should have the chance to make such a decision. He was not given that chance in this case in connection with all of these extras. Liability for extras, like all contract liability, is essentially a matter of consent; of promise based on consideration. Marcus v. S. S. Kresge Co., 283

Ill App 556, 17A Corpus Juris Secundum, "Contracts," § 371(1).

 The Illinois cases allow recovery for extra compensation only when the contractor has made his claim for an extra, clear and certain, before furnishing the item, not after. They are in accord with the comments to be found in 31 Ill Law Rev 791 (1937). There the author, after reviewing the cases, makes the following analysis:

> "The real issue in these cases is whether or not the contractor has, at the time the question of extra work arises, made his position clear to the owner or his agents and that would seem to be the true test in situations where a written order clause is sought to be disregarded. If he does expressly contend that work demanded is extra, the owner certainly cannot be said to be taken unawares, and if orders are given to go ahead it is with full knowledge of the possible consequences."

 The contractor claims that the requirement of written stipulation covering extras was waived by the owner's conduct. The defendants quite agree that such a waiver is possible and common but claim this evidence fails to support a waiver of the requirement. There are many cases in which the owner's conduct has waived such a requirement. City of Elgin v. Joslyn, 136 Ill 525, 26 NE 1090; Sexton v. Chicago, 107 Ill 323; Kirk v. Wolf Mfg. Co., 118 Ill 567, 8 NE 815; Snead & Co. Iron Works v. Merchants Loan & Trust Co., 225 Ill 442, 80 NE 237; W. H. Stubbings Co. v. World's Columbian Exposition Co., 110 Ill App 210. In all the cases finding that such a provision had been waived thus allowing a contractor to collect for extras, the nature and character of the item clearly showed it to be extra. Also, in most cases the owner's verbal consent of request for the item

was clear beyond question and was proven to have been made at the time the question first arose while the work was still to be finished. The defendants' refusal to give a written order has in itself been held to negative the idea of a waiver of the contract requirement for a written order. F. W. Carlin Const. Co. v. New York & Brooklyn Brewing Co., 149 App Div 919, 134 NYS 493. We think the waiver of such a provision must be proved by clear and convincing evidence and the task of so proving rests upon the party relying upon the waiver. Atwell Printing & Binding Co. v. Prairie Farmer Pub. Co., 246 Ill App 100. See Annotation 2 ALR3d, "Effect of Stipulation in Private Building or Construction Contract," etc., p 620 et seq.

From the amount of the judgment, it is plain that it includes an award of the full contract balance. This cannot be justified. The undisputed evidence in the record shows that performance of the builder's obligations under the contract are less than full performance. For the judgment to have included the contract balance in full, the evidence should have shown full performance of the contract by the plaintiff. Yet the undisputed evidence here clearly shows the contrary. The plaintiff's President, Leeds Watson, testified to a number of items yet to be furnished that had not been furnished and that there was yet work to be done, which he was willing to do. His recognition of things which he is willing to furnish makes it clear that the plaintiff has not fully performed its undertaking. Likewise, substantial items of performance are yet due under the contract which he did not mention, such as earth moving agreed upon and specified, which remains to be done.

It is therefore clear that the plaintiff's recovery cannot be based on its full performance of the contract. The contractor's right to recover rests on the law of "Substantial Performance" and its propriety must be shown by that law. Recovery for "Substantial Performance"

must, by definition be something less than full contract price.

"It has been decided that he who relies upon substantial as contrasted with complete performance must prove the expense of supplying the omissions or he fails in his proof, for he cannot recover for full performance where a part of the contract is still unperformed." 13 Am Jur2d, p 112, "Building & Const Cont," § 121.

■■■■■■■ Under the common law, one seeking recovery on a contract, had to prove literal performance of his promises in order to hold the opposite party to his promise to pay. This was particularly harsh in building and construction cases because literal performance in every detail is unlikely. Moreover, labor and materials expended upon an owner's land could not be returned to the contractor if the owner avoided the contract. It was therefore held, and became the rule in Equity, that if the owner got substantially the thing for which he bargained, he must pay for it, but he was allowed a credit as compensation for the deficiencies existing in what he got as compared to what strict performance would have given him. In such cases, the burden is on the builder to show the elements of "Substantial Performance" and show the amount he should recover. Page on Contracts, § 2778. Illinois holds that in contract cases the burden is on the plaintiff to establish the elements measuring the amount of his recovery. Supergear Drive Corp. v. Hollister-Whitney Co., 327 Ill App 414, 64 NE2d 672. Thus, in "Substantial Performance" recovery there should be deductions from the contract price by an amount necessary to account for the difference between what the owner got by the actual performance as compared to what he bargained for. Keeler v. Herr, 157 Ill 57, 41 NE 750. Bloomington Hotel Co. v. Garthwait, 227 Ill 613, 81 NE 714, and it is not proper to fix the amount of

recovery at the value of the building to the owner. Booher v. Williams, 341 Ill App 504, 95 NE2d 518. We are unable to find any such reduction of the contract price here. Indeed the judgment appears to include the full contract price. The interest awarded, according to our calculations, could be based on nothing less.

 The interest awarded as part of the judgment which the trial judge describes as 5% interest on the contract balance for 2 years, that being the period since the last payment, seems to us to be without foundation in our interest statute, and the cases construing it. C 74, Ill Rev Stats 1965, § 2. This statute, by its terms, limits the award of interest on contracts for money that is due. Booher v. Williams, supra. Interest is not awarded on money that may be found due, if the person withholding payment has done so in good faith, because of a genuine and reasonable dispute. In other words, interest would be a proper element of recovery only if it could be said relationship of debtor and creditor existed between the parties. Mariner v. Gilchrist, 280 Ill 544, 117 NE 695.

 Interest can be awarded on money payable under building contracts, even when the amount payable may be uncertain until legally resolved; In re Morrison, 261 F 355, Downey v. O'Donnell, 92 Ill 559, but it has been held error to allow interest on an amount due when, as here, that amount depends largely upon the construction placed on the terms of a contract, and upon questions of fact about which there is room for a difference of opinion. O'Heron v. American Bridge Co. of New York, 177 Ill App 405. The dispute here was genuine, substantial, and we believe in good faith on the part of both parties; there was nothing unreasonable or vexatious about the defendant's delay in paying. Here, under any theory for recovery of interest, interest could only be charged on 40% of the contract price provided to be paid when the structure was under roof, since 40% had been paid, and the remaining 20% was only due when

the contract was completed. Putting a roof on a structure, that does not meet the specifications of the one contracted for, would not make the 40% payment due, so that interest could be allowed on that payment.

An inspection of the premises by the court [3] was made pursuant to agreement of the parties but the defendant claims that the agreement was not complied with. The record shows the following words of the trial judge stated in open court on July 21, 1965, "Let the record show that by agreement of both parties through counsel, the court will view the premises at approximately 11:00 o'clock A. M., Friday, and at that time both parties may be present, and both counsel with the court. Counsel may confer with clients in the hearing of the court, and counsel may point out certain items claimed as defects and state their position regarding these items. This is in the nature of an agreement by the parties, and no one may testify or comment, since that would be in the nature of testimony." No words of assent or of disapproval appear in the record. The inspection apparently took place at the time agreed, because the record shows that on the following Monday in open court, the judge stated, "whereupon let the record show inspection of the premises as per agreement of parties."

 The defendant contends the inspection or visit to the scene went beyond what was agreed, because the plaintiff at the visit was represented by its president, his wife, and two of its carpenters, employees of the plaintiff's corporation, and witnesses in this case. We

---

[3] This practice has been approved in Illinois cases, viz.: Springer v. City of Chicago, 135 Ill 552, 26 NE 514; Eizerman v. Behn, 9 Ill App2d 263, 132 NE2d 788 (Court had discretion to disallow motion pictures of operation of machines); Equitable Powder Mfg. Co. v. Cleveland, C., C. & St. L. R. Co., 155 Ill App 265; Wise v. Potomac Nat. Bank, 393 Ill 357, 364, 65 NE2d 767. The practice is discussed in Wigmore on Evidence, 3rd Ed, §§ 1169 and 1805.

can see no justification for the court not limiting those present to those described in the court's pronouncement of the order.

The effect of this judgment is to order the defendants to pay more than they promised to pay for a house that falls short of the house that was promised them. Moreover, it leaves them to bear alone, the future costs involved in correcting the substantial defects that admittedly exist.

In summary then, we believe the award to the plaintiff for extras should be limited to those items for which the proof establishes the requirements set forth. The award for the balance of the contract price should reflect by way of credit given the owners, that there are still costly items to be performed and supplied. This portion of the award should reflect the things that remain to be done to the house to make it conform to the promises made and the items of faulty performance to be remedied. The contract language must be given effect; any waiver of its provisions must be established by clear and convincing evidence, and parol evidence should not be the basis for determining that the contract language did not mean what it said. Parol evidence must be accepted only for the purposes allowed by the authorities and not accepted to alter the terms of the regular contract or to resurrect early negotiations. Interest should not be charged on what is found to be due. The plaintiff is entitled to recover within the confines of the above stated requirements. For that purpose, the judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.

MORAN and GOLDENHERSH, JJ., concur.