# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Stark Excavating, Inc. v. Carter Construction Services, Inc.*, 2012 IL App (4th) 110357

---

| | |
|---|---|
| Appellate Court Caption | STARK EXCAVATING, INC., Plaintiff-Appellant, v. CARTER CONSTRUCTION SERVICES, INC., Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0357 |
| Filed | March 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging the breach of a construction contract arising from the general contractor's nonpayment of plaintiff subcontractor for the extra work done for winter protection of the work site, the trial court erred in granting the general contractor's motion for summary judgment on plaintiff's claim for the winter protection work where a trier of fact could have found that plaintiff should have been paid, even though the work was excluded in the contract, and the trial court also erred in dismissing plaintiff's claims for recovery under theories of *quantum meruit* and unjust enrichment, since a genuine issue of material fact existed as to whether plaintiff had a right to recover the cost of the winter protection work. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 06-L-181; the Hon. Jeffrey B. Ford, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Stanley N. Wasser (argued) and Howard W. Feldman, both of Feldman, Wasser, Draper & Cox, of Springfield, and Robert J. Lenz, of Bloomington, for appellant.

Kevin M. Colombo (argued), of Saikley, Garrison, Colombo & Barney, LLC, of Danville, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Justice Pope concurred in the judgment and opinion.

Presiding Justice Turner concurred in part and dissented in part, with opinion.

## OPINION

¶ 1        On September 23, 2010, plaintiff subcontractor, Stark Excavating Inc. (Stark), filed a third-amended complaint against defendant general contractor, Carter Construction Services, Inc. (Carter), alleging breach of contract for nonpayment of the following: (1) extra work for winter protection of the work site, (2) other authorized extras, and (3) retainage. The complaint also included quasi-contractual claims, under the theories of *quantum meruit* and unjust enrichment, for recovery of winter protection costs. On October 18, 2010, Carter filed a motion to dismiss Stark's third-amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2008)). In February 2011, by stipulation of the parties, the court dismissed that portion of count I seeking payment for other authorized extras and retainage. Previously, on February 24, 2009, the trial court granted partial summary judgment in favor of Carter as to Stark's claim for payment for extra work for winter protection of the premises. Following a hearing, on March 29, 2011, the court granted Carter's motion to dismiss and dismissed Stark's suit with prejudice.

¶ 2        Stark appeals, arguing that the trial court erred in granting summary judgment to Carter on Stark's contract claim for winter protection work. Stark also asserts that the court erred in dismissing with prejudice Stark's claims for payment for winter protection work under the theories of *quantum meruit* and unjust enrichment. We reverse and remand.

¶ 3                                      I. BACKGROUND

¶ 4        In summer 2005, Carter and Menards, Inc., entered into negotiations to expand the warehouse for Menards' Champaign, Illinois, store. Carter was to serve as the general contractor for the project.

¶ 5        On July 25, 2005, Stark submitted a written proposal to perform concrete, excavation, trench backfill, and site utility work for the expansion project. The bid was for $1,113,590 and specifically excluded "winter protection of concrete or subgrade" and "winter heat."

"Winter heat" refers to chemicals added to the concrete mixture by the materials supplier. "Winter protection of concrete or subgrade" refers to steps taken at the jobsite such as warming the subgrade, using heated enclosures or tents, and covering the concrete with insulation blankets or loose straw.

¶ 6    Later that summer, Menards put the project on hold. As a result, Carter requested that Stark review its bid to account for the delay. On August 18, 2005, Stark sent a letter to Carter stating that if the project was to begin in mid-September an additional $2,000 would be needed to perform the concrete work. In the letter, Stark explained that the increase was necessary to "heat and protect the late season concrete."

¶ 7    In October 2005, Menards approached Carter about performing the project during the winter months. As a result, Carter held a meeting with the low-bid subcontractors to discuss the new start date for the project. A representative from Stark attended the meeting. At the meeting, the subcontractors were given the opportunity to submit revised bids. On October 10, 2005, Carter entered into a contract with Menards for the warehouse expansion project.

¶ 8    In a letter dated October 11, 2005, Stark submitted a revised bid for the project. The letter includes an up-charge for winter heat of the concrete, but does not discuss the cost of performing winter protection work. The letter provides in relevant part:

"2) Due to the two-month delay in beginning this project, all concrete utilized for this job will be subject to a winter heat charge by the material supplier. **The up-charge associated with this change will be $12,100.00.** The $2,000 figure included in my letter dated August 18, 2005 was given based upon a mid September start." (Emphasis in original.)

¶ 9    On October 17, 2005, Stark and Carter entered into a subcontract agreement. Stark agreed to furnish all materials and perform all work necessary to complete the following projects for the warehouse expansion: earthwork, excavating, trench backfill, concrete work, and site utility. The projects were to be completed as per the quote submitted by Stark on October 11, 2005. Paragraph "eighth" of the contract sets forth requirements for the approval of extra work. The paragraph provides in relevant part:

"No extra work additions, deductions, or changes shall be made in the work, nor shall there be any charges for premium time, except upon written order signed by Carter Construction Services, Inc., which order shall specify the amount of additional compensation or credit if any."

¶ 10    Subsequent to the making of the contract, Stark expressed concern to Carter regarding the necessity of performing winter protection work. In a December 2, 2005, letter, Stark stated the following:

"It is the intent of Stark Excavating to fully comply with our contractual obligations per our Subcontract agreement dated October 17, 2005, our proposal dated July 25, 2005, supplemental proposal dated August 18, 2005, and supplemental proposal dated October 11, 2005. ***

*** It is our position to move forward with the necessary steps to maintain the project schedule, however, we intend to document all additional costs that fall outside of our contractual obligations as outlined by the aforementioned documents.

Upon completion of the disputed work, we intend to resolve our claim as provided by the terms of our subcontract agreement."

¶ 11    In a letter dated December 6, 2005, Carter stated that it would not sign any work orders not preapproved by Menards. The following day, Stark responded that it would not expect Carter to sign work orders for winter protection but "upon completion of the dispute[d] work we intend to resolve our claim as provided by the terms of our subcontract agreement." In his deposition testimony, David Stark, Jr., a project manager for Stark, claimed that the winter protection measures were taken because Kenneth Carter, the chief executive officer of Carter, threatened to remove Stark from the job if it was not quickly completed. Kenneth Carter did not deny this conversation occurred. He merely testified in his deposition he did not recall threatening to remove Stark from the job. Kenneth Carter testified at his deposition he believed Stark was contractually obligated to perform the winter protection measures. In addition, he testified Carter's contract with Menards dated October 10, 2005 (which does not appear to be part of the record), states: "Winter conditions are included in the base bid." By January 2006, Stark had finished pouring the concrete slab for the warehouse.

¶ 12    On August 29, 2006, Stark filed a claim against Carter for breach of contract for nonpayment of the following: (1) extra work for winter protection of the premises, (2) other authorized extras, and (3) retainage. Stark sought $171,262.49 for extra work for winter protection, $6,813.50 for authorized extras, and $126,573.73 for retainage. In response, Carter filed a motion to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)). The trial court denied Carter's motion to dismiss. Carter then filed a motion for summary judgment under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2008)).

¶ 13    On February 24, 2009, the trial court granted partial summary judgment in favor of Carter as to Stark's claim for payment for extra work for winter protection of the premises. Contrary to Kenneth Carter's belief, the court found the winter protection work was excluded from the contract between Stark and Carter. The court then applied the test for recovery for extra work set forth in *Watson Lumber Co. v. Guennewig*, 79 Ill. App. 2d 377, 226 N.E.2d 270 (1967). After reviewing each of the *Watson* elements, the court found that there was no genuine issue of material fact. According to the court, the winter protection work was clearly outside the scope of the contract. However, the court found nothing showed Carter ordered the work done. Further, the court found Carter did not agree to pay extra for the work. According to the court, Stark was not contractually obligated to perform the winter protection work. The court stated:

"It would appear to me that what we're talking about here is do the work that you were ordered to do under the contract and basically the answer is then, well, it should have been, although it's not spoken about it here, well, we can do the work, but it won't be in a workmanlike manner if we do it pursuant to the contract because there's no winter heating done.

And the answer to that is do the work pursuant to the contract. That's how everything kind of plays out.

Mr. Stark takes that as a threat. Well, he can take that as a threat or he can just do the

work pursuant to the contract. It's not done in a workmanlike manner.

What are the alternatives? You do it that way or you in writing advise them that the contract says this, we will do it that way. We expect to be paid that way. Please be advised it won't be in a workmanlike manner because there's no winter heat because you're refusing to pay for the winter heat. I mean, that's the way to do it. But–so there's more than one option here.

To come and say, well, we did it because they made us do it that way isn't correct. There's a contract that specifically says how this work is to be done and it's not ambiguous.

They took it as a threat apparently because they want to do the work in a workmanlike manner, but that doesn't mean they had to do that. They could have done it exactly as the contract was said, but limited themselves by saying we will do it this way, but it won't be in a workmanlike manner because that's how you contracted it for. There's more than one way to do that. They did it–they chose which way to proceed, and there was more than one way to proceed and there's probably more ways to proceed than I've stated here. But I'm putting in this example to show that they decided to do it this way. They may have taken it as a threat, but they decided to do it this way and that's a voluntarily [*sic*] act."

Finally, the court found the winter protection work was not rendered necessary by fault of "the contractor." According to the court, Carter did not order or agree to pay for that extra work. The court also denied Carter's motion for summary judgment as to the matters of retainage and other authorized extras.

¶ 14    On April 21, 2009, Stark filed an amended complaint. In count I of the amended complaint, Stark realleged its breach-of-contract claims. In counts II and III, Stark added claims for payment for winter protection work under the theories of *quantum meruit* and unjust enrichment. Carter filed a motion to dismiss counts I, II, and III under section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)). After a hearing, on July 29, 2009, the trial court struck count I of the amended complaint on the grounds that the court had previously ruled as to the winter protection. The court also dismissed with prejudice counts II and III, finding that Stark could not recover under a theory of *quantum meruit* or unjust enrichment when the contract they entered into expressly addresses the provision of winter protection work.

¶ 15    On April 1, 2010, Stark filed its second-amended complaint. In the complaint, Stark realleged the same causes of action as those set forth in its first-amended complaint. In response, Carter filed a motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2008)). The trial court dismissed count I without prejudice and noted that it had previously dismissed counts II and III.

¶ 16    On September 23, 2010, Stark filed its third-amended complaint. Stark realleged the same causes of action in counts I, II, and III. Carter filed a motion to dismiss Stark's third-amended complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2008)). Section 2-619.1 is a combined motion that incorporates sections 2-615 and 2-619 of the Code (735 ILCS 5/2-619.1, 2-615, 2-619 (West 2010)). Prior to the trial court's ruling

on the third-amended complaint, by stipulation of the parties, the court dismissed that portion of count I seeking payment for "certain other extras beyond the requirements of the subcontract" and "retainage." On March 29, 2011, the trial court granted, with prejudice, Carter's motion to dismiss.

¶ 17    This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, Stark argues that the trial court erred in granting summary judgment to Carter on Stark's contract claim for winter protection work. Stark also asserts that the court erred in dismissing with prejudice Stark's claims for payment for winter protection work under the theories of *quantum meruit* and unjust enrichment.

¶ 20                            A. Recovery for Extra Work

¶ 21    We review a grant of summary judgment *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314, 318 (2001). Summary judgment is appropriate when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). When ruling on a motion for summary judgment, the trial court must view all evidence in a light most favorable to the nonmovant. *West v. Kirkham*, 207 Ill. App. 3d 954, 958, 566 N.E.2d 523, 525 (1991).

¶ 22    A court's principal goal in construing a contract is to ascertain and give effect to the intentions of the parties at the time they entered into the contract. *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 310, 767 N.E.2d 945, 949 (2002). "[I]f the contract terms are unambiguous, the parties' intent must be ascertained exclusively from the express language of the contract [citation], giving the words used their common and generally accepted meaning." *Shields*, 329 Ill. App. 3d at 310, 767 N.E.2d at 949 (citing *Clay v. Illinois District Council of the Assemblies of God Church*, 275 Ill. App. 3d 971, 978, 657 N.E.2d 688, 692 (1995)). Whether a contract is ambiguous is a question of law for the court. *Shields*, 329 Ill. App. 3d at 311, 767 N.E.2d at 949.

¶ 23    A leading case in the area of recovery for extra work is *Watson*, where a contractor who built a home for a contract price of $28,206 "claimed a right to extra compensation with respect to no less that 48 different and varied items of labor and/or materials." *Watson*, 79 Ill. App. 2d at 384, 226 N.E.2d at 274. In *Watson*, the Fifth District reversed a judgment for the contractor, stating that it "is clear that the contractor does not have the right to extra compensation for every deviation from the original specification on items that may cost more than originally estimated." *Watson*, 79 Ill. App. 2d at 393, 226 N.E.2d at 278.

¶ 24    *Watson* summarized the applicable rules for recovery for extras as follows:

"The law assigns to the contractor, seeking to recover for 'extras,' the burden of proving the essential elements. [Citation.] That is, he must establish by the evidence that (a) the work was outside the scope of his contract promises; (b) the extra items were ordered by the owner, [citations]; (c) the owner agreed to pay extra, either by his words

or conduct, [citation]; (d) the extras were not furnished by the contractor as his voluntary act, and (e) the extra items were not rendered necessary by any fault of the contractor." *Watson*, 79 Ill. App. 2d at 389-90, 226 N.E.2d at 276.

¶ 25    It is clear Stark and Carter interpreted the scope of the work included in their sub-contract differently based on the deposition testimony of David Stark, Jr., and Kenneth Carter. Kenneth Carter believed the winter protection work at issue was included in the contract. David Stark, Jr., and the trial court correctly concluded the winter protection work was not included in the contract.

¶ 26    However, while the contract specifically excluded any work for winter protection of concrete or subgrade from the contract price, it was recognized from the very beginning that such work might be necessary, depending on delay in the work schedule and winter conditions. Twelve thousand one hundred dollars was added in the October 11 supplemental proposal for winter heat, but that was only for the winter heat chemical added to the concrete by the material supplier. No charge was ever added to the contract for winter protection of the concrete or subgrade. That issue was left open.

¶ 27    When the evidence in this case is viewed in a light most favorable to Stark, questions of fact exist whether Stark is possibly entitled to payment for the winter protection work under the *Watson* test. Carter was acting as the agent of the owner in Carter's dealings with Stark. There is evidence in the record Carter specifically told Stark to do its work pursuant to the contract and that Carter believed the winter protection work was included in its contract with Stark. A trier of fact could find Carter implicitly ordered Stark to perform the winter protection work if it found the work was necessary for Stark to perform the job in a workmanlike manner, especially here where (1) David Stark, Jr., testified Carter threatened to kick Stark off the job if it did not quickly get the work done and (2) Kenneth Carter testified he believed the winter protection work was included in Carter's contract with Stark.

¶ 28    Was winter protection really necessary? That is a question of fact which cannot be resolved on summary judgment. We disagree with the trial court's conclusion that the concrete work could have been performed in an unworkmanlike manner. "[O]ne who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner." *Dean v. Rutherford*, 49 Ill. App. 3d 768, 770, 364 N.E.2d 625, 627 (1977). The court's belief Stark could have proceeded in an unworkmanlike manner on a building that could possibly be open to the public is unrealistic and contrary to public policy.

¶ 29    Did "the owner agree[ ] to pay extra, either by his words or conduct"? This factor is somewhat inapplicable in this case because Kenneth Carter testified he believed the winter protection work was part of Carter's contract with Stark. As stated earlier, if the trier of fact found the winter protection work was necessary, but not included in Stark's contract with Carter, it could also find Carter responsible to pay for the work, because of its conduct in threatening to kick Stark off the job if it did not quickly get the work done, regardless of the weather conditions.

¶ 30    In addition, Carter's refusal to sign work orders may have been a breach of the contract, which contemplated winter protection work, but did not set a price for the work, instead agreeing that the work would be extras. Should Stark have set a price for the winter

protection work in advance? That would have been difficult to do. As Kenneth Carter stated in his deposition, that would be a guess. "I don't know what the winter was going to be and I don't know what the winter is going to be this year."

¶ 31 As the trial court found, the winter protection work was clearly outside the scope of the contract. "The contractor should not be required to furnish items that were clearly beyond and outside of what the parties originally agreed that he would furnish. The owner has a right to full and good faith performance of the contractor's promise, but has no right to expand the nature and extent of the contractor's obligation." *Watson*, 79 Ill. App. 2d at 390-91, 226 N.E.2d at 277.

¶ 32 A trier of fact could also find the winter protection work was "not furnished by the contractor as his voluntary act." Stark made it clear, in its December 2 letter as it began the concrete work, that it considered the winter protection work as additional costs that fell outside its contractual obligations, but it would perform the work because it was necessary. "Upon completion of the disputed work, we intend to resolve our claim as provided by the terms of our subcontract agreement." Carter knew that Stark was going to perform the winter protection work, but did not tell Stark to stop. This is not the situation described in *Watson*: " 'as a general rule, a builder or contractor is not entitled to additional compensation for extra work or material voluntarily furnished by him without the owner's request, or knowledge that he expects to be paid for it.' " *Watson*, 79 Ill. App. 2d at 392, 226 N.E.2d at 277-78 (quoting then 17A C.J.S. *Contracts* § 371(1), at 401). Carter knew Stark expected to be paid and had that knowledge before the winter protection work began.

¶ 33 There is no suggestion that the extra items here were rendered necessary by the fault of Stark.

¶ 34 Based on the evidence in the record, a trier of fact could find Stark should be paid for the winter protection work. Therefore, the trial court erred in granting Carter's motion for summary judgment.

¶ 35                                    B. Quasi-contractual Recovery

¶ 36 "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 278 (2003). "A section 2-619 motion admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352, 882 N.E.2d 583, 588 (2008). On appeal from a section 2-619 motion, the reviewing court must determine "whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 494, 639 N.E.2d 1282, 1293-94 (1994). The court must construe the pleadings and supporting documents in favor of the nonmoving party. *Czarobski v. Lata*, 227 Ill. 2d 364, 369, 882 N.E.2d 536, 539 (2008). The standard of review for a section 2-619 motion is *de novo*. *Czarobski*, 227 Ill. 2d at 369, 882 N.E.2d at 539.

¶ 37 In counts II and III of the third-amended complaint, Stark makes quasi-contractual claims for unjust enrichment and *quantum meruit*. Both legal theories are based on a contract

implied in law. *Midwest Emergency Associates-Elgin, Ltd. v. Harmony Health Plan of Illinois, Inc.*, 382 Ill. App. 3d 973, 982, 888 N.E.2d 694, 701 (2008). Unjust enrichment and *quantum meruit* actions are also similar, in that the "plaintiff must show that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9, 812 N.E.2d 419, 426 (2004). The measure of recovery for a *quantum meruit* action is the reasonable value of the work and material provided, while "in an unjust enrichment action, the inquiry focuses on the benefit received and retained as a result of the improvement provided by the contractor." *Hayes Mechanical*, 351 Ill. App. 3d at 9, 812 N.E.2d at 426.

¶ 38     As a general rule, given an express contract between the parties, there can be no quasi-contractual recovery. *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 750, 643 N.E.2d 245, 251 (1994). As a result, it does not appear Stark could recover for anything under a quasi-contractual recovery theory that was covered by the contract. However, in this case, the payment for winter protection work was not included in the contract. In fact, it was expressly excluded. The contract only set forth the price for winter heat. As a result, quasi-contractual recovery for the winter protection work is possible.

¶ 39     With regard to Stark's claims it is entitled to recovery under theories of *quantum meruit* and unjust enrichment, genuine issues of material fact exist whether Carter received valuable services from Stark which Carter should pay for to avoid receiving an unjust benefit. Assuming Carter demanded the concrete work be done at a specific time and the winter protection work, which was specifically excluded from the contract between Carter and Stark, was necessary to complete the concrete work in a workmanlike manner at that time, then Carter may have received a valuable benefit without paying for it. Stark poured the concrete in a timely manner without any allegations of defect in the work. Further, Stark alleged to have spent $171,262.49 to perform the winter protection. We find that the trial court erred in dismissing Stark's quasi-contractual claims for recovery, because there is a genuine issue of material fact concerning Stark's right to recover the cost of the winter protection work.

¶ 40                                    III. CONCLUSION

¶ 41     For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

¶ 42     Reversed and remanded.

¶ 43     PRESIDING JUSTICE TURNER, specially concurring in part and dissenting in part.

¶ 44     I specially concur in the majority's reversal of the trial court's judgment dismissing counts II and III. I respectfully dissent from the majority opinion reversing the trial court's summary judgment for defendant on count I, and I address count I first.

¶ 45     As to count I, the majority analysis notes the trial court was correct in concluding the

winter protection was not included in the contract. See *supra* ¶ 25. Assuming *arguendo* this is so, the winter protection at issue must be considered an extra, and I agree *Watson* is controlling as the leading case in the area of recovery for extra work. See *supra* ¶ 23. However, in my view *Watson* compels a different result than that reached by the majority.

¶ 46 In addition to the *Watson* factors noted by the majority, *Watson* also found as follows:

"The proof that the items are extra, that the defendant ordered it as such, agreed to pay for it, and waived the necessity of a written stipulation, must be by clear and convincing evidence. The burden of establishing these matters is properly the plaintiff's. Evidence of general discussion cannot be said to supply all of these elements." *Watson*, 79 Ill. App. 2d at 390, 226 N.E.2d at 276.

¶ 47 The majority ostensibly concludes a rational trier of fact could find Carter's words and conduct establish clear and convincing proof of each of these factors. While I agree the fact finder could conclude Carter ordered Stark to proceed with the work and the costs for winter protection were not voluntarily assumed by Stark, I do not agree a fact finder could conclude by clear and convincing evidence Carter agreed to pay the costs for winter protection or waived the necessity of a written stipulation.

¶ 48 As in *Watson*, the contract here included a provision that all charges for extras needed approval in writing. Stark agreed to this stipulation in paragraph 8 of the subcontract after twice being requested to adjust its bid to account for a concrete pour in winter weather. Stark did not attempt to except winter protection from the "extra" provision.

¶ 49 Stark's December 2, 2005, letter referenced winter protection and indicated Stark would be documenting additional costs not preapproved by Carter. This alone demonstrates Carter had not approved additional costs for winter protection and had not waived the necessity of its written authorization. Carter's December 6, 2005, letter made clear it would not be signing any work orders not preapproved by Menards. Stark's December 7, 2005, response further acknowledged it was proceeding without approval of winter protection costs and with knowledge Carter had not agreed to pay for these additional costs. Moreover, any "threat" made by Carter on December 1 or 2, 2005, predated at least the latter two letters and could not be construed as acquiescence to pay the additional winter protection costs. Additionally, "[t]he defendants' refusal to give a written order has in itself been held to negative the idea of a waiver of the contract requirement for a written order." *Watson*, 79 Ill. App. 2d at 396, 226 N.E.2d at 279.

¶ 50 Given the foregoing, I cannot envision how Stark could ever prevail on its contract theory, and I believe the majority errs in reversing the trial court's grant of summary judgment for Carter on count I.

¶ 51 As to counts II and III, I specially concur with the majority and agree those counts were erroneously dismissed. The fact finder could conclude winter protection became necessary by circumstances beyond Stark's control, and I agree Carter's words and conduct should be considered in deciding who should bear the burden of the additional costs. However, in the course of pursuing equity, Stark's failure to except winter protection from the "extra" provision merits consideration. Further warranting consideration is that Stark's updated bids did not even mention the clearly potential and significant winter-protection costs.