ED KEIM BUILDERS, INC., Plaintiff-Appellee, *v.* BOYD A. HARTLEY *et al.*, Defendants-Appellants.

(No. 70-104;

Second District—March 17, 1971.

Lewis, Overbeck & Furman, of Chicago, for appellants.

Donovan, Dichtl, Atten, Mountcastle & Roberts, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This case arises from a contract between the plaintiff and the defendants for the construction of a single family dwelling in Downers Grove, Illinois. Plaintiff-builder brought this action to foreclose a mechanic's lien on the subject property for the unpaid portion of the contract. After consideration of extensive claims for the contract's extras, deletions, and its liquidated damages clause for delay in completion, a judgment of $6,533.43 was entered in favor of the plaintiff. Defendants now appeal the holding of the trial court as being unsupported by the evidence.

The contract was signed on October 18, 1967, and construction begun shortly thereafter. On December 15, 1967, the buyers, Boyd and Barbara Hartley, delivered their check for the balance of the down payment to the builder, Ed Keim Builders, Inc., and received a warranty deed conveying the property from Keim to themselves. On January 18, 1968, a second deed was delivered to Hartleys' mortgagee conveying the property from Hinsdale Federal Savings and Loan Association to Ed Keim Builders, Inc.

During the course of construction, Hartley wrote a number of letters to Keim setting out selections he was called upon to make under the contract, certain of his own observations about the construction, and specific changes in the construction. In each case where an extra or deletion was mentioned, a price quotation was included by him.

In September of 1968, Hartley exercised his option under the contract to terminate Keim's responsibility for completing the work. Hartley subsequently completed the house on his own. Keim then proceeded to bring this suit for work performed.

Defendants first argue that certain extras and deletions allowed by the trial court are incorrect in amount; that judgment for extras and deletions should be based on figures in Hartley's letters to Keim; and that the evidence did not support the trial court's findings with regard to certain items, to wit: wiring of second furnace, wiring of additional thermostat, raised panel shutter doors, three-way switch in master bathroom, extra circuit in fifth bedroom, and deletion of carpeting, driveway, and grass seeding.

The pertinent portion of the contract reads as follows:

"Purchasers may order extra work or make changes in or deductions from the work. No extra work or change involving extra cost shall be performed unless and until the owner and at least one of the Purchas-

ers sign a written memorandum stating the nature of the extra work or change and the cost thereof and no claim for an addition to the contract price shall be allowed or valid unless the amount thereof is so agreed upon in writing prior to the performance of the work involved. In case of a deduction or omission from the work the contract price shall be reduced by the reasonable value of the work so eliminated * * *."

The defendants allege that the trial court ignored the contract language set forth above and decided the case on a purely equitable basis. However, we find that the record discloses ample evidence to support the judgment. Hartley did write letters to Keim regarding work changes; a number of them appear in evidence. In each case, the letter refers to a number of work changes and in many instances, mentions a price. Testimony by both Keim and Hartley, as well as subcontractors on the job, reveal that in each case, Hartley orally ordered the work change, writing the letters at some later date. Keim further testified that often the letters were received after the change had already been effected. Hartley must have acquiesced in the commencement of the extra work. By his own testimony, he visited the construction site as often as twice a day. Knowing that extra work had commenced pursuant to his oral request, he never insisted that a writing, signed by both of the parties, be executed as required in the contract.

■■ Defendants cite *Watson Lumber Co. v. Guennewig* (1967), 79 Ill.App.2d 377, for the argument that the court must give effect to this type contract clause. In *Watson*, the contractor furnished extras without the knowledge or approval of the purchaser. The court properly held that the evidence must clearly and convincingly show that the owner gave his consent to the extra and that his consent was evidenced in writing where the contract so required. In the present action, the owner did give his consent to the extra items, and he did so in writing. The question presented is whether he may hold the contractor to a price quotation cited in a memorandum signed only by the owner. We think not. It is incumbent upon the owner to enforce the "extras" provision in his contract, or it is waived by him. By allowing work on extras to proceed before securing a memorandum signed by Keim, Hartley waived his right to enforce the provision. (See, *Theis v. Svoboda* (1911), 166 Ill.App. 20, 23.) A contractual provision such as in this case prevents the contractor from proceeding with extra work on his own initiative, while allowing the owner to control his liabilities. Where an owner orders work to proceed, he cannot claim to be taken unaware, nor can he require the contractor to bear the cost of the work he has so ordered, nor may he rely on price quotations chosen arbitrarily after work was commenced

or completed. The court, in the trial of these issues, had ample testimony to support its findings with regard to "extras".

■■ Additionally, defendants argue that certain deletions ordered by them should be credited at a price quotation found in letters to plaintiff. The contract clause specifically requires all deletions be credited to the owner at "the reasonable value of the work so eliminated." Keim testified as to the reasonable value of the work deleted at Hartley's request, *i.e.,* the carpeting, the driveway, and the grass seeding. Regarding the grass seeding figure and the carpet figure, the defendants chose not to controvert the plaintiff's evidence, but relied solely on the letters written by Hartley to Keim, yet there is no evidence that Keim ever agreed to allowing credits in those amounts. Absent any proof of an agreed-upon figure, Keim's uncontroverted testimony as to reasonable value must stand.

■■ With regard to the driveway figure, the defendants did offer the testimony of another contractor who testified that the reasonable value of putting in a concrete driveway was $630, but later testified that this figure included $150, or more, for redigging the drive area, a charge that would not be included in figuring the reasonable value of work deleted. Keim's testimony was that the reasonable value of the driveway was $499.20, less the work already performed, for a net credit of $165.45. The trial court considered all the testimony and allowed a credit of $333.75. In view of the contract provision and the testimony presented, the trial court's findings were not against the manifest weight of the evidence.

Defendant contends that the trial court erred in its determination of liquidated damages. The contract provided:

"Seller agrees to start construction work within five days after the delivery to Purchasers of the Deed to the aforesaid real estate and further agrees to prosecute the work with diligence, to complete the same within four months after date of delivery of deed, and to suffer a reduction in the construction price of $20.00 a day as liquidated damages for each day of delay after the expiration of said four-month period in completing said construction work, excluding, however, all days of delay caused by acts of God, fire or other casualties, strikes, material shortages, acts of Purchaser and all other matters over which Seller has no control."

The testimony of the parties established that the contract was signed in October, 1967, and actual construction begun, shortly thereafter. On December 13, 1967, a deed, from Keim to Hartleys, was exchanged for the balance of the earnest money deposit. Another deed was delivered to the Hartleys on January 18, 1968, which ran from Hinsdale Federal

Savings and Loan Association to Ed Keim Builders, Inc. The plaintiff testified to various delays allegedly beyond his control. Among these were: a delay in installation of natural gas service by the gas company, from November 1967 to March 1968, which in turn caused the premises to remain unheated; excessive subsurface water; accumulated frost under the piers causing them to heave and separate the roof; numerous work changes by the defendants causing changes in the scheduling of subcontractor's performance; a special request made by the defendants for excavation along the back wall of the house; and delays by the defendants in making selections called for in the contract.

The defendant likewise testified to actions of the plaintiff causing his own delay, such as taking no action to speed up installation of gas service, providing inadequate pumping system for the basement, inefficient scheduling of subcontractors so that, on some days, no one worked the site, walking off the job in early June to demand waiver by Hartley of the liquidated damages clause, etc.

Testimony was equally controverted as to the date when the liquidated damages clause should stop running. Hartley testified that he was issued an occupancy permit on October 7, 1968. He cancelled the contract with Keim on September 23, 1968. Keim testified that a letter from Hartley on May 28, 1968, waived the liquidated damages from that point. The city building inspector testified that a temporary occupancy permit could have been obtained on August 22, 1968.

■■ A reviewing court will not upset the trial court's award of damages where the evidence is conflicting, where there is evidence to support the verdict and where there is no indication that the award is the result of passion, prejudice, or corruption. (*Landolt v. Stratmann* (1967), 87 Ill.App.2d 81.) This is so even where the reviewing court would have been better satisfied with a different finding. In the instant case, the court, after considering all of the conflicting testimony, rendered a judgment against Keim for 43 days chargeable delay at $20.00 per day for a total of $860.00. Though the trial court did not elaborate on this finding, we believe the evidence is sufficient to support it. The question of how many days of delay were, or were not attributable to Keim, is a matter of fact. The trial judge was present to hear and evaluate the testimony and his judgment should be reversed only if contrary to the manifest weight of the evidence.

■■ We find that, on both questions raised by defendants, the trial court's decision is supported by the evidence. We therefore affirm that decision.

Judgment affirmed.

ABRAHAMSON and GUILD, JJ., concur.