BULLEY & ANDREWS, INC., Plaintiff-Appellant, Cross-Appellee, v. SYMONS CORPORATION, Defendant-Appellee, Cross-Appellant.

(No. 59523;

First District (3rd Division)—January 23, 1975.

Alvin E. Domash, Charles A. Adamek, and Hugh C. Griffin, all of Lord, Bissell & Brook, of Chicago, for appellant.

John F. McClure and David M. Meister, both of Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, for appellee.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, Bulley & Andrews, Inc., a general contractor, brought this action against defendant, Symons Corporation, to recover damages for contract extras, enforcement of its mechanic's lien, and damages for defendant's fraudulent misrepresentation. The circuit court of Cook County

declared a mechanic's lien and entered judgment in favor of plaintiff for some, but not all, of its claimed extras. Also, plaintiff's fraudulent misrepresentation count was dismissed. On appeal, plaintiff alleges that the trial court erred by entering judgment in favor of defendant on plaintiff's claim for extras resulting from owner ordered work, and on plaintiff's fraudulent misrepresentation count. Defendant cross-appeals, alleging error in the judgment and mechanic's lien entered against it.

We affirm.

The record reveals that the defendant, Symons Corporation, was in the business of designing and manufacturing concrete forming equipment. On August 8, 1968, Symons contracted with Bulley & Andrews, Inc., a general contractor, for Bulley & Andrews to build an office and factory addition which provided for vast amounts of architectural concrete work to be done. The specifications incorporated into the contract stated that all forming equipment "will be furnished by Symons Manufacturing Company to the contractor from his standard catalog items, a copy of which is attached to this specification." By way of explanation, forming equipment consists of those items which may be assembled together to form or create a mold into which wet concrete may be poured. This case is concerned with two particular types of forming equipment, form tie rods and rustication strips. The form rod is a metal rod inserted through holes in both forms and secured on the outside of each form so as to hold the forms together and give the resulting concrete a uniform thickness. The concrete is poured over the ties, allowed to set, and when the forms are removed the protruding ends of the ties are snapped off. The rustication strip is a piece of metal attached to the inside of the form to create a design on the completed concrete wall.

Bulley & Andrews began work, and when it was ready to begin putting together the forms, its field superintendent, Richard Braun, asked Symons' supervisor for the forming equipment to be used. Symons provided the forming equipment, and therein began the basis for this litigation. Bulley & Andrews' position was that it thought the contract called for the use of the standard looped tie rods, a type of tie rod with loops at each end so the tie may be inserted through the forms and locked in place by simply slipping a wedge bolt into each loop. Accordingly, Bulley & Andrews' personnel testified at trial that they prepared the contractor's bid based upon the use of the easy-to-use looped ties Bulley & Andrews had been purchasing from Symons for the past 20 years. The tie rods supplied, however, were not the standard looped tie rods; Symons supplied threaded tie rods. Threaded tie rods serve the same function as the looped tie rods, but instead of having loops on both ends, one end of the rod is threaded to accept a securing nut. The threaded tie rod is

pictured in Symons' catalog as being appropriate for special uses, and the Symons' supervisor explained to Braun that the threaded tie was to be used to enhance the final appearance of the concrete walls by reducing grout leakage. Also, Symons furnished a slightly different type of rustication strip than was pictured in its catalog.

Braun accepted the tendered threaded ties and the different rustication strips, and Bulley & Andrews began the forming. Braun neglected, however, to inform his office what type of forming equipment was received. The work took considerably longer to complete than was originally expected. Representatives from both Bulley & Andrews and Symons were at the site regularly to observe the progress, but there is no evidence in the record to indicate that Bulley & Andrews notified Symons either orally or in writing that it was experiencing difficulties and additional costs due to the use of the threaded tie rods and different rustication strips. Nine months after substantially all the forming was completed, Bulley & Andrews figured out that the additional expenses incurred in forming were due to the use of the threaded tie rod and the different rustication strip. Symons was then notified of a claim for extras for this work, but Symons refused to pay because it was not notified of the claim earlier. Also, Bulley & Andrews presented Symons with claims for extra work performed in another part of the job, the yard storage area, and for a delay in the work occasioned by Symons' architect. Symons refused to recognize these claims, too. Bulley & Andrews filed the instant lawsuit.

The case was heard at a bench trial, and the trial court made an express finding that the plaintiff incurred substantial expenses by the use of the different forming equipment, but that plaintiff could not recover the additional expenses from such work because the claim was not submitted until after the work was completed. Accordingly, judgment was entered for defendant on plaintiff's claim for extras resulting from the use of the threaded tie rod and different rustication strip. On the fraud count, the court entered judgment for defendant. As to plaintiff's claims for extras resulting from the work performed in the yard storage area and for the delay occasioned by defendant's architect, the trial court entered judgment for plaintiff and declared a mechanic's lien. Plaintiff appeals from the judgments entered in favor of the defendant. Defendant cross appeals from the judgment and mechanic's lien entered against it.

On appeal, plaintiff contends that the trial court erred by refusing to allow compensation for the extra work necessitated by the defendant's modification of the forming equipment. Specifically, plaintiff alleges that such compensation was recoverable as extras under the contract, and also as damages for defendant's fraudulent misrepresentation.

■■ For a contractor to recover additional compensation from an owner

700

for extra work, the contractor must prove the essential elements of his case as set forth in *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App.2d 377, 226 N.E.2d 270. The contract must establish that (a) the work was outside the scope of his contract promises, (b) the extra work items were ordered by the owner, (c) the owner agreed to pay extra, either by his words or conduct, (d) the extras were not furnished by the contract as his voluntary act, and (e) the extra items were not rendered necessary by any fault of the contractor.

The parties differ as to whether the work in question was outside the scope of the contract. The contract stated that:

> "All  *  *  *  form ties, form hardware, steel adjustable shores and metal rustication strips will be furnished by Symons Manufacturing Company to the contractor from his standard catalog items, a copy of which is attached to this specification."

As for the ties, the catalog pictured both the standard loop tie rod and the threaded tie rod that was actually furnished. Plaintiff alleges that it thought the work was to be performed with the standard loop tie rod, the only type of tie rod it had used for constructing such walls in its many years of using Symons' forming equipment. Defendant claims that the contract called for the threaded tie rod.

■■ A contract is ambiguous when it is reasonably susceptible to different constructions. (*Village of North Riverside v. Brookfield-North Riverside Water Com.* (1973), 15 Ill.App.3d 752, 305 N.E.2d 221.) The instant contract is ambiguous inasmuch as it is unclear as to which type of tie rod would be furnished by defendant. An ambiguous contract will be construed according to the intent of the parties, and the parties' actions under the ambiguous contract are of great aid in determining what was intended. (*Svenson v. American National Bank & Trust Co.* (1967), 87 Ill.App.2d 181, 186, 231 N.E.2d 103, 106.) Although there may have been an ambiguity in the contract as to the specified type of form tie rods, any doubt as to the type of equipment to be used on the job was dispelled when Symons' supervisor supplied Bulley & Andrews' field superintendent with the threaded tie rods to be used. At that time, plaintiff knew what was intended by defendant under the contract, but plaintiff failed to protest, negotiate, comment, or otherwise call to defendant's attention any doubts it may have had as to whether the contract called for the use of threaded form tie rods. We feel the ambiguity was resolved by plaintiff's actions, and the work resulting from the use of the threaded tie rods was within the scope of the contract.

As to the rustication strips, the trial court expressly found:

> "The rustication strip furnished to the plaintiff by the defendant was not pictured in the defendant's catalogue, which formed a

part of the agreement of the parties, the specific rustication strip pictured therein appearing to have a slot as opposed to a round hole."

Although the use of the rustication strip as supplied may not have been part of the original contract because the rustication strip was not included in defendant's standard catalog, we feel the contract was modified to include the use of the different type of rustication strip. The contract provided that the owner shall have the right "to make any alterations, additions, or omissions that he may desire in work or materials herein specified." By furnishing plaintiff-contractor with the different type of rustication strip, defendant-owner offered to modify the existing contract. To modify a contract under such a clause, as opposed to making a new contract for extras, depends upon how the changes alter the character of the work. For a modification "there can be no material change so as to constitute a radical or substantial departure from the original contract." (17A C.J.S. *Contracts* § 373, at 423 (1963).) For example, in *Kell v. Kosary* (1968), 93 Ill.App.2d 400, 236 N.E.2d 349, the "extra work was so different from that called for under the contract that it was the subject of a separate oral agreement rather than a mere modification of the written contract." (93 Ill.App.2d 400, 403.) In the instant case, the change did not substantially alter the character of the work at the time the change was proposed, so the offer to change the type of rustication strip was an effective offer for a modification of the existing contract.

■■ Defendant's offer to modify the agreement under the modification clause was communicated to plaintiff by the fact that defendant supplied a rustication strip different from that which was depicted in defendant's standard catalog. Plaintiff accepted the offer by remaining silent and beginning work, there being no reason to believe that the job would be more d'fficult with the use of the different equipment. Any work resulting therefrom was within the scope of the contract. Since the use of the threaded tie rods and the different rustication strips was within the scope of the agreement between the parties, any work resulting therefrom was within the scope of the contract and not the subject of extras. Plaintiff has failed, therefore, to prove that the work was outside the contract, and the trial court properly denied plaintiff's claim for extras.

■■■ Now we turn to plaintiff's contention that the trial court erred by dismissing Count IV of plaintiff's complaint, which alleged that defendant knew the use of the threaded tie rod and modified rustication strip would be more expensive for plaintiff than the use of the standard equipment, but concealed that fact from plaintiff, who was induced to enter into the contract to its injury. Without analyzing the merits of plaintiff's claim, it is clear that plaintiff continued work after it dis-

covered that the forming with the different equipment was much more difficult and expensive than it expected. In *Eisenberg v. Goldstein* (1963), 29 Ill.2d 617, 622, 195 N.E.2d 184, *cert. denied*, 377 U.S. 964, the Illinois Supreme Court stated the rule of law to be applied in such cases:

> "A person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence, so as to afford both parties an opportunity to be restored to their original position. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations. *Kanter v. Ksander*, 344 Ill. 408; *Greenwood v. Fenn*, 136 Ill. 146."

Even if plaintiff's allegation of fraud in the formation of the contract were true, plaintiff would not be entitled to relief on this ground because it remained silent on the matter until 9 months after the completion of the protracted and difficult forming work, continuing to work under the contract. Plaintiff waived its right to complain of the fraud, and the trial court properly dismissed the fraud count of plaintiff's complaint.

We feel the crux of the instant litigation was plaintiff's silence when it discovered that the forming was taking an inordinate amount of time due to the use of the modified forming equipment. Had plaintiff promptly notified defendant, the parties could have resolved the matter at that time, either by settlement or in the courts. Having silently continued work under the contract, however, plaintiff waived its right to any relief to which it may have been entitled. In *Stresenreuter Brothers v. Bowes* (1924), 233 Ill.App. 143, 162, this court noted under similar circumstances that "acquiescence with knowledge of the facts, may imply assent and give rise to an obligation, or constitute a waiver of right." We reach the same conclusion and affirm the judgment of the circuit court in favor of defendant and against plaintiff.

Defendant presents two allegations of error in its cross appeal. The first allegation of error is that the trial court erred by entering judgment in plaintiff's favor for $3,466.10 on plaintiff's claim for extra work performed in defendant's yard storage area. The surrounding facts are undisputed. Work on the yard storage area was delayed while defendant revised the plans under a hold order. When plaintiff received the revised drawings, it began work and estimated the additional cost of the work. The estimate was not submitted to defendant until three months after the yard storage area work was completed. Plaintiff's president testified at trial

that he realized extra work was involved, but he did not discuss the matter with defendant or defendant's architect sooner because he "just wanted to get the work done and get out of there." The trial court found that "plaintiff, at the request of the defendant, performed work on the yard storage area other than that required under the original agreement; the additional cost of this work on the yard storage area was stipulated to be $3,466.10. Therefore, the plaintiff is entitled to recover the stipulated amount for extra work performed on the yard storage area."

On appeal, defendant contends that although it ordered the work to proceed, the contract dictated the procedure to be followed. The contract stated:

> "CHANGES:
>
> It is understood that the owner, shall have the right, during the progress of construction, to make any alterations, additions, or omissions that he may desire in work or materials herein specified or shown on the drawings. The same shall be carried into effect by the contractor, without, in any way, violating or vitiating the contract, but if such changes are made, the contractor, architect, and the owner must have the value of same agreed upon in writing."

Defendant submits that plaintiff was obligated by the contract to obtain a written agreement as to the value of the extra work, and absent the agreement, plaintiff could not recover.

There is no doubt that the revised drawings were substantially different than the original drawings the plaintiff bid upon, and changed the scope of plaintiff's contractual promises. The additional work necessitated by the revised drawings was therefore an extra to the contract.

■■ In *Ed Keim Builders, Inc. v. Hartley* (1971), 132 Ill.App.2d 119, 268 N.E.2d 49, the court stated:

> "It is incumbent upon the owner to enforce the 'extras' provision in his contract, or it is waived by him. By allowing work on extras to proceed before securing a memorandum signed by [contractor], [owner] waived his right to enforce the provision. [Citation.] A contractual provision such as in this case prevents the contractor from proceeding with extra work on his own initiative, while allowing the owner to control his liabilities. Where an owner orders work to proceed, he cannot claim to be taken unaware, nor can he require the contractor to bear the cost of the work he has so ordered * * *." (132 Ill.App.2d 119, 121.)

In the instant case, defendant owner allowed work in the yard storage area to proceed upon the revised drawings without securing the neces-

sary writing, and therefore waived the benefits of the contractual provision. The trial court properly entered judgment in favor of plaintiff on its claim for extras in the yard storage area.

Defendant's second allegation of error is that the trial court erred by awarding judgment to plaintiff upon plaintiff's claim for damages occasioned by a 12-day work stoppage. The reason for the delay was that the necessary building permit from the city of Des Plaines had not been issued, and work could not proceed without the permit. Under the contract, plaintiff had the duty to secure the necessary building permits, but a prerequisite for the issuance of the city building permit was the approval of the plans by the Metropolitan Sanitary District of Greater Chicago, and such approval was originally denied by the District because the plans prepared by the owner's architect were incomplete. Work was stopped while the owner's architect revised the plans and obtained the District's approval. The city building permit was then obtained by the plaintiff and work resumed. The trial court expressly found that the delay was caused by the architect, not by the plaintiff and wrote:

> "For the purposes of securing a permit application number from the Metropolitan Sanitary District of Chicago [sic], as opposed to the preparation of plans and specifications for the building, the architect is the agent of the owner."

The trial court entered judgment of $3,505.85 for plaintiff.

■■ On appeal, defendant alleges that the trial court erred by holding the architect to be defendant's agent, citing *Miller v. DeWitt* (1965), 59 Ill.App.2d 38, 88, *aff'd in part and rev'd in part on other grounds,* 37 Ill.2d 273, which quoted 5 Am. Jur. 2d *Architects* § 6, at 668 (1962):

> "As a general rule, an architect, as far as the preparation of plans is concerned, acts as an independent contractor, but so far as regards the performance of his supervisory functions with respect to a building under construction, he ordinarily acts as the agent and representative of the person for whom the work is being done."

Plaintiff urges that the architect was the defendant-owner's agent. In support, plaintiff points out that the application for the District permit was addressed to defendant, but completed and submitted by the architect, who was acting as defendant's president testified, as defendant's agent.

We perceive the issue to be whether a contractor may recover damages from an owner for a work stoppage resulting from a delay in securing the necessary building permits which was caused entirely by incomplete

or defective plans prepared by the owner's architect. On this point, Professor Williston wrote:

> "If the owner through his architect or engineer can be regarded as having superior expert knowledge, and on the basis of such knowledge to represent to the builder the feasibility of carrying out the plans, the owner must be held responsible for the consequences of any defects in them." ( 6 Williston on Contracts § 1966, at 5516-17 (rev. ed. 1938).)

The agreement between the contractor and the owner provided that the contractor was to perform the specified work using the plans prepared by the owner's architect, and was to secure the necessary building permits. The plans were incomplete and therefore defective. The delay in the issuance of the necessary permits was the direct consequences of the defective plans, so it necessarily follows that the owner is liable to the contractor for the delay. (See *Mason Tire & Rubber Co. v. Cummins-Blair Co.* (1927), 116 Ohio St. 554, 157 N.E. 367.) We find no error in the trial court's ruling on this count of plaintiff's complaint.

We briefly note defendant's allegation that the court's ruling on the delay question has no support in the pleadings, and conclude that this allegation is without merit. Accordingly, we affirm the judgment of the circuit court in favor of plaintiff and against defendant, from which defendant appealed.

The judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McNAMARA and MEJDA, JJ., concur.