**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-60747**
_____


**SHACKELFORD PLUMBING CORPORATION,**

**Plaintiff-Appellee,**

**versus**

**SIEBE GOVERNMENT CONTRACTS DIVISION, A SIEBE ENVIRONMENTAL**
**CONTROLS GROUP, DIVISION OF BARBER-COLMAN COMPANY,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(3:98-CV-463(B)(N))**


November 7, 2000

Before WOOD,[1] DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[2]

At issue is waiver _vel non_ of contractual requirements for
_written_ change orders and _timely_ claim submittals.  Shackelford
Plumbing Corporation filed this diversity action against Siebe
Government Contracts Division of the Barber-Colman Company for 14
claims arising at eight military facilities in the United States.
The district court granted Siebe summary judgment on one claim.  A
jury found for Siebe on two claims and for Shackelford on the

_____

[1]Harlington Wood, Jr., Circuit Judge of the Seventh Circuit,
sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

remaining 11.  Siebe contests the denial of judgment as a matter of law as to five claims involving four sites.  Alternatively, it challenges a jury instruction and requests a new trial for all but one of those five claims.  We **AFFIRM in PART, REVERSE and RENDER in PART, and REMAND FOR ENTRY OF AN AMENDED JUDGMENT**.

I.

Siebe contracted with the Government to perform work at military installations (FORSCOM contracts) and hospitals (MEDCOM contracts).  Shackelford was a subcontractor for those contracts.  The contracts were "indefinite quantity contracts", meaning the master subcontracts had zero dollars value.  As the Government and Siebe agreed on delivery orders, Siebe issued delivery orders, complete with pricing, to Shackelford.  Shackelford completed over $4 million in work for Siebe on 11 delivery orders.

The two master subcontracts between Siebe and Shackelford contained identical provisions regarding changes in the work required by the delivery orders.  *Prior to* the beginning of such changed work, Siebe was required to give Shackelford written notice of the change; Shackelford, to submit a written estimate to Siebe.  Paragraph 5.2 provided:

> The Subcontractor [Shackelford] may be *ordered in writing by the Contractor [Siebe]* without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions, or other revisions,.... *[Shackelford], prior to the commencement of such changed or revised Work, shall submit promptly to [Siebe] written copies of an estimate for adjustment* to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

(Emphasis added; footnotes omitted.) Testimony at trial focused *not* on Shackelford's failure to submit a prior estimate but on work done without a prior written change order.

Shackelford's contracts with Siebe incorporated provisions of Siebe's contracts with the Government. Under them, Siebe had specified times within which to submit a claim to the Government after the cost was incurred. Along this line, Shackelford was required to provide timely claim submittal to Siebe for additional costs, including claims for delay damages. Paragraph 5.3 provided:

> *The Subcontractor [Shackelford] shall make claims promptly to the Contractor [Siebe]* for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which [Siebe] is required to make under the Prime Contract within a specified time period or in a specified manner *shall be made in sufficient time to permit [Siebe] to satisfy the requirements of the Prime Contract. Such claims shall be received by [Siebe] not less than two working days preceding the time by which [Siebe's] claims must be made.* Failure of [Shackelford] to make such a timely claim shall bind [Shackelford] to the same consequences as those to which [Siebe] is bound.

(Emphasis added.) The parties do *not* dispute that the post-work claim submittal had to be in writing.

## II.

In defense of its refusal to pay Shackelford's claims, Siebe points to the absence of prior written change orders and to Shackelford's failure to submit several claims in the time and manner required. Shackelford counters that Siebe waived those requirements.

3

Pursuant to the choice of law clauses in the contracts, Illinois law governs. Under it, and regarding paragraph 5.2 (changes in the work), a provision in a construction contract that requires change orders to be in writing is valid. *Watson Lumber Co. v. Guennewig*, 226 N.E.2d 270, 276 (Ill. 1967). To prove a waiver of a writing requirement for such changes, Shackelford must demonstrate *by clear and convincing evidence*: "(a) the work was outside the scope of [the] contract promises; (b) *the extra items were ordered by [Siebe]*, (c) *[Siebe] agreed to pay extra, either by [] words or conduct,* (d) the extras were *not* furnished by [Shackelford] as [a] voluntary act, and (e) the extra items were *not* rendered necessary by any fault of [Shackelford]". *Id.* (emphasis added and citations omitted); *id.* ("Where the contract provides that there shall be *no* charge for extra work unless a written agreement is made therefor, the builder *cannot* recover compensation as for extra work on account of alterations made at the oral request or consent of the owner but for which *no* agreement to pay additional compensation is made." (emphasis added; internal quotation marks and citation omitted)).

"Clear and convincing evidence is that quantum of proof that leaves *no* reasonable doubt in the mind of the fact finder as to the truth of the proposition [stated]." *City of Chicago v. Boulevard Bank Nat'l Assoc.*, 688 N.E.2d 844, 852 (Ill. App. Ct. 1997) (emphasis added; internal quotation marks and citation omitted).

The **Watson** court also stated:

> Illinois cases allow recovery for extra compensation *only* when the contractor has made his claim for an extra, clear and certain,

4

> *before* furnishing the item, *not* after.... If he does expressly contend that work demanded is extra, the owner certainly *cannot* be said to be taken unawares, and if orders are given to go ahead it is with full knowledge of the possible consequences.

226 N.E.2d at 279 (emphasis added; internal quotation marks and citation omitted).

Although **Watson** stated the claim must be "clear and certain", the contract at issue in **Watson** simply required that, pre-work, the *fact of the change* be in writing, not addressing whether the *amount* likewise must be in writing. **Id.** at 274. In **Bulley & Andrews, Inc. v. Symons Corp.**, 323 N.E.2d 806 (Ill. App. Ct. 1975), an Illinois court applied **Watson** to a contract with a clause similar to paragraph 5.2, which required written notice of the *value* of the claim, *not only* of the change itself:

> It is incumbent upon the owner to enforce the "extras" provision in his contract, or it is waived by him. By allowing work on extras to proceed before securing a memorandum signed by [the contractor, the owner] waived his right to enforce the provision. A contractual provision such as in this case prevents the contractor from proceeding with extra work on his own initiative, while allowing the owner to control his liabilities. When an owner orders work to proceed, he cannot claim to be taken unaware, nor can he require the contractor to bear the cost of the work he has so ordered.

**Id**. at 811-12 (internal quotation marks omitted); *see* **id.** (finding even though "[t]he estimate [for work ordered by the owner] was *not* submitted ... until three months after the ... work was completed", because owner allowed work to proceed before securing necessary writing, it waived contractual provision (emphasis added)).

5

We construe **Bulley & Anderson** to mean that, if Siebe by words or conduct ordered extra work and agreed to pay for it, Siebe *waived both* of paragraph 5.2's requirements: it *not only waived* the requirement that Siebe's change order be in writing *but also waived* the requirement that Shackelford submit a written estimate *prior* to beginning that work.

Paragraph 5.3's requirement of timely claims for additional costs, including delay damages, is another matter. As discussed in part II.A.2 *infra*, neither **Watson** nor **Bulley & Anderson** apply to timely claim submittals.

A.

Siebe moved for judgment as a matter of law (JMOL) at the close of Shackelford's evidence and at the close of all the evidence. The denial of JMOL is reviewed *de novo*, applying the standards used by the district court. *E.g.,* **Hill v. International Paper Co.**, 121 F.3d 168, 170 (5th Cir. 1997).

Such judgment "is appropriate if, after viewing the trial record in the light most favorable to the non-movant, there is *no* 'legally sufficient evidentiary basis' for a reasonable jury to have found for the prevailing party". *Id.* (quoting FED. R. CIV. P. 50(a) (emphasis added)). For such evaluation, all inferences are drawn in favor of the non-movant. *E.g.,* **Omnitech Int'l, Inc. v. Clorox Co.**, 11 F.3d 1316, 1323 (5th Cir.), *cert. denied*, 513 U.S. 815 (1994).

Three witnesses testified on behalf of Shackelford: Lanny Shackelford, president and part-owner of Shackelford; Michael Pitts, part-owner and former vice-president of Shackelford; and

6

Aaron Terry, former account manager for Siebe. Siebe offered only one witness: Jerry Joyner, Siebe's director of operations and assistant treasurer when the claims at issue arose.

Although the parties at trial, in their appellate briefs, and at oral argument did *not* address paragraphs 5.2 and 5.3 separately, the provisions raise distinct questions. The contracts between Siebe and Shackelford contained writing requirements, quoted above, for two different time periods: (1) *prior* written order for the change and a written estimate (¶ 5.2), and (2) timely claim submittal *after* the cost was incurred (¶ 5.3). The first requires Siebe's written order and Shackelford's written estimate *before* work begins; the second, submittal of the claim at least two days before Siebe was required to submit the claim to the Government.

In the light of this distinction, we first turn to whether a reasonable jury could find Siebe waived the requirement of a *prior* written change order and written estimate; second, to whether a reasonable jury could find Shackelford met, or Siebe waived, the requirement of timely claim submittal *after* the cost was incurred.

1.

The record is replete with instances in which Siebe gave oral directives to Shackelford to perform work *not* covered by a delivery order. Witnesses for both parties admitted that often Siebe did *not* and could *not* comply with the requirement to give written orders.

Joyner admitted: Siebe had actual notice of all the work; and, when Siebe received the claims at issue, it simply ignored

7

them.  Testimony by Shackelford's witnesses established it was "standard operating procedure" for Shackelford to proceed with extra work at Siebe's directive, and Shackelford would still receive payment even without first giving a written estimate. Exhibits submitted by Shackelford showed several occasions on which delivery orders were signed *after* the work began or even *after* the work was complete.

We therefore conclude that a reasonable jury, applying **Watson**, could find that Siebe, by its course of conduct, waived the requirement for a written change order.  As discussed *infra*, a reasonable jury likewise could find that Siebe, not only by its conduct but also by its words, waived the pre-work writing requirements.

a.

Regarding Shackelford's claim for the extra cost of installing more expensive furnaces than specified at Fort Drum, Siebe contends:  the furnaces were bought at the direction of the Government, *not* at Siebe's direction; and, because the claim was made nine months later, Siebe could *not* pass it along to the Government.  As noted, the timeliness *vel non* of the claim is discussed *infra* in part II.A.2.

Lanny Shackelford testified:  at a January 1997 meeting he attended with the Government and Siebe, a Government representative ordered the more expensive furnaces; and Siebe's project manager agreed and asserted Siebe would either work it out or pay.  Joyner testified he knew from experience the brand of furnaces requested was more expensive than originally planned.

The district court did *not* err in concluding that a reasonable jury could find by clear and convincing evidence that Siebe had ordered the work and agreed to pay for it, thereby waiving the contract's pre-work writing requirements.

b.

Prior to establishing Shackelford, Mr. Shackelford had been part-owner of another subcontractor for Siebe. That entity, now named C.C.I. Industrial, Inc., had installed gas pipes at Fort Gillem. A warranty covered the pipes and meters, but when Siebe had difficulty getting C.C.I. to repair them, Shackelford performed the work. Shackelford completed the job on 23 November 1996 and submitted its claim ten days later.

The work was *not* part of a delivery order, because Shackelford had *no* delivery order at Fort Gillem. Because the parties have done so, we will treat this as a paragraph 5.2 dispute. Siebe asserts there was *no* proof it ordered the work or agreed to pay for it.

Joyner testified he knew the distinction between Shackelford and C.C.I., yet he *assumed* Mr. Shackelford would complete the work *free of charge* because of his former association with C.C.I. In contrast, Mr. Shackelford testified he thought Joyner was joking when he insinuated Mr. Shackelford was responsible because of that previous association.

Siebe requested Shackelford to send someone to Fort Gillem to discuss the work with a Siebe manager, and Siebe knew Shackelford was doing the work. Mr. Shackelford testified that, on the day the Siebe manager asked him to do the work, the manager also stated

9

that either Siebe or the company holding the warranty would pay Shackelford for it.

The district court did *not* err in concluding that a reasonable jury could find that Siebe waived the requirement of a written change order.

c.

Because the delivery order at Tripler Medical Center exceeded $1 million, Siebe's contract was with James Lane A.C. and Plumbing, Inc.; and Lane subcontracted with Shackelford. Prior to suing Siebe, Shackelford obtained an assignment of Lane's rights.

Siebe does *not* contend that it did *not* order the work or agree to pay for it; nor does Siebe assert the submission of the claim did *not* comply with the timeliness requirement. (Indeed, this dispute does *not* appear to fall under the Shackelford-Siebe contract, because Shackelford's contract at Tripler was *not* with Siebe.) Instead, Siebe asserts the timing of the claims did *not* meet the requirement of the termination letter it issued to Lane.

On 19 February 1997, Joyner, by letter to Lane, terminated the contract for convenience and required that all claims be submitted to Siebe within ten days. However, Shackelford had made two claims *directly to Siebe prior to the termination*. Although Joyner acknowledged this timing of the receipt of the claims from Shackelford, Siebe contends these claims should have been submitted through Lane, because Shackelford's contract was with it, and Lane had the right to adjust the costs.

Shackelford's delivery order at Tripler did *not* include supplying a generator or completing electrical work, but Mr.

10

Shackelford testified that Siebe's on-site manager requested that Shackelford both obtain a generator and perform some electrical work. Ample evidence, including an admission by Joyner, shows that Siebe and Shackelford dealt directly with each other regarding extra work. The most telling evidence of the direct relationship is that Siebe terminated its contract with Lane as a result of a conversation between Mr. Shackelford and Joyner.

The district court did *not* err in concluding that a reasonable jury could have found that Siebe did receive timely notice of the claims through the direct submission. In the alternative, if the requirements of paragraph 5.2 did apply, as discussed below, a reasonable jury could have found Siebe waived the writing requirement.

i.

Mr. Shackelford testified that, when power was lost for Siebe and Shackelford's work trailers, Siebe's on-site manager asked Shackelford to supply a generator. By asking what the cost would be, the manager allegedly implied Siebe would pay for the generator. Mr. Shackelford testified that Joyner admitted Siebe owed this claim. Joyner testified he merely agreed to pay half the cost; and, at trial, he maintained he would have paid, had the contract with Lane *not* been terminated.

The jury found for Shackelford in the amount of $4,600.80, approximately half the amount claimed. Because Joyner admitted to having agreed to pay half the cost, we conclude that a reasonable jury could have found by clear and convincing evidence that Siebe waived the requirement of a written change order. Moreover, even

11

if Siebe is correct that waiver must precede the work, *see infra* part II.B, the jury's finding was *not* unreasonable in the light of Siebe's course of conduct and the manager's statements.

ii.

As also noted, Shackelford's delivery order at Tripler did *not* include electrical work, but Mr. Shackelford testified that Siebe's on-site manager requested that Shackelford do the work and assured Shackelford it would be paid. Moreover, Joyner said he agreed to be billed for the electrical work. Therefore, the district court did *not* err in concluding that reasonable jurors could find for Shackelford.

In sum, in the light of the above analysis of the claims at Fort Drum, Fort Gillem, and Tripler, the district court properly denied JMOL regarding the requirements for a written change order and written estimate prior to beginning the work. Accordingly, we turn to whether, after the cost was incurred, Shackelford was required to timely submit its claim.

2.

As noted, the timeliness requirement of Siebe's contract with the Government was incorporated into its subcontract with Shackelford, and Shackelford was held to the same consequences as Siebe. Siebe contests the timeliness of claims made after completion of the work at Fort Drum and the delay at Walter Reed Medical Center. Siebe raised this issue in its motion for JMOL at the close of the evidence.

As also noted, the **Watson** line of cases addresses the waiver of a writing requirement before beginning extra work, *not* of timely

12

subsequent submittal of a claim. Needless to say, a waiver under *Watson* of the requirement that changes be in writing does *not* constitute waiver of other contract provisions as well.

Although, even in their appellate briefs, the parties have *not* clearly distinguished their contentions as to the two separate paragraphs (5.2 and 5.3), we find that, because there is *no* evidence in the record Siebe agreed to waive the requirement of timely claim submittal and the evidence clearly shows the claims for Fort Drum and Walter Reed were *not* timely, the denial of JMOL was improper for those two claims. (In this regard, the error by the district court is most understandable. For example, Siebe did *not* object to this issue *not* being included in the jury instructions. Of course, because Siebe had earlier raised the issue in its JMOL, it was preserved concerning whether JMOL should have been granted. *E.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.5 (5th Cir. 1999).)

a.

As discussed above, on 12 February 1997, at the Government and Siebe's instruction, Shackelford ordered more expensive furnaces for Fort Drum than those originally specified. Shackelford installed the furnaces in April or midsummer, but the claim was *not* submitted to Siebe until 24 November 1997.

Mr. Shackelford testified that, at the end of the job, the parties had been unable to delete enough work to cover the extra cost of the furnaces, so Shackelford had *no* other choice but to bill Siebe for it. Joyner testified: he knew the furnaces installed were more expensive; but because Shackelford did *not*

13

timely submit the costs, Siebe could *not* submit the claim to the Government.

Shackelford maintains that the extra cost was incurred because of defective specifications submitted by Siebe and therefore the requirement of timely submission of the claim did *not* apply pursuant to an exception in the contract. Because this argument was raised for the first time on appeal, we do *not* reach it.

Shackelford also contends that timely claim submittal was *not* required because Siebe had actual knowledge of the claim. This argument is unpersuasive because, even though Siebe knew that a different brand of furnaces would be installed and that they were more expensive, Siebe had *no* actual knowledge of the *amount* of the claim. Therefore, even though, as discussed, a reasonable jury could have found by clear and convincing evidence that the requirement of a prior written change order had been waived, a reasonable jury could *not* find that the timely claim requirement had subsequently been either complied with or waived.

b.

Shackelford asserted it incurred extra costs for a job at Walter Reed, because Siebe instructed Shackelford to have its superintendent stay on-site, even though the start of the project was delayed. The delay costs arose between 2 February 1997 and 8 March 1997. Shackelford did *not* submit the claim until 28 August 1997. Siebe asserts that, because the claim was over five months late, it could *not* pass it along to the Government.

Shackelford again contends that Siebe caused the delay and therefore the timely claim provisions did *not* apply. However, *no*

14

proof on this point was offered at trial other than that problems were associated with the work plan; no one addressed the question of fault.

Shackelford also asserts that, because Siebe had actual knowledge of the presence of Shackelford's supervisor at the site during the delay, *no* need for a timely claim existed. Although Siebe had notice of the supervisor's presence, there is *no* evidence it had actual notice of the amount of the corresponding claim. Moreover, at trial, the parties disputed whether the supervisor was unproductive during this time (in which case, Shackelford would be entitled to submit a claim for an extra) or whether he did other work for Shackelford.

Construing all evidence in favor of Shackelford, *no* reasonable jury could have found Shackelford complied with the claim requirements or that Siebe waived them.

In sum, for the reasons given above, the district court erred in denying JMOL on the issue of timely claim submittal for Fort Drum and Walter Reed.

B.

Seeking a new trial on all the claims except the one for Walter Reed, Siebe challenges the district court's refusal (over Siebe's objection) to instruct the jury that, in order to return a verdict for Shackelford on its claims for extras, the jury must find that, *prior to Shackelford's commencing work*, Shackelford made its claim clear and certain and Siebe agreed to pay. In order to prevail in challenging a jury instruction:

15

> First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will *not* reverse if we determine, based upon the entire record, that the challenged instruction could *not* have affected the outcome of the case.

**Johnson v. Sawyer**, 120 F.3d 1307, 1315 (5th Cir. 1997) (emphasis added; internal quotation marks and citation omitted).

The district court's instruction included the five essential elements of waiver set out by **Watson**. *See* **Watson**, 226 N.E.2d at 276. Our review of the instructions as a whole does *not* create a substantial and ineradicable doubt that the jury was properly guided in its deliberations. Illinois cases that apply **Watson** do *not* require a specific finding that the agreement to pay *preceded* the start of the work. *See, e.g.*, **A.W. Wendell & Sons, Inc. v. Qazi**, 626 N.E.2d 280, 287 (Ill. App. Ct. 1993); **Duncan v. Cannon**, 561 N.E.2d 1147, 1149 (Ill. App. Ct. 1990); **Bulley & Andrews**, 323 N.E.2d at 809.

### III.

Because we conclude there was a legally sufficient evidentiary basis for a reasonable jury to have found by clear and convincing evidence that Siebe waived the requirements for a prior written change order and an estimate, we **AFFIRM** the district court's denial of judgment as a matter of law as to the claims at Fort Gillem and Tripler. However, we **REVERSE** the denial of judgment as a matter of law as to the claims at Fort Drum and Walter Reed, because a reasonable jury could *not* find that the timely claim submittal requirement either was met or did *not* apply. Finally, we **AFFIRM**

16

the refusal to grant a new trial.  This matter is **REMANDED** for entry of an amended judgment.

***AFFIRMED IN PART; REVERSED and RENDERED IN PART;
and REMANDED***
